WILLIAM BROWN ET AL., Respondent, v. THE WABASH, ST. LOUIS AND PACIFIC R'Y. Co., Appellants.

Kansas City Court of Appeals, July 6, 1885.

1. COMMON CARRIERS—LIABILITY FOR INJURIES.—Carriers are not responsible for an injury to animals resulting from their own inherent propensities. Yet they are bound to provide suitable, safe and secure cars for the transaction of their business. *Potts v. Ry. Co.,* 17 Mo. App. 394.

2. ——— CONTRACT FOR RELEASE.—A contract, though signed by the shipper, agreeing to release the carrier, will not exonerate him from resulting damage or from his implied duty to furnish suitable means to safely transact his business.

3. ——— STIPULATIONS AS TO DAMAGES.—Persons entering into a written or printed contract are bound to examine and ascertain its contents, and if they accept it without objection they are bound by its terms—in the absence of fraud or imposition. *Moore v. Henry,* decided at this term. It is settled in this state that a common carrier may, by contract, limit the amount of liability in case of loss, to a specified sum agreed upon. *Harvey v. R. R. Co.,* 74 Mo. 538 ; approved in *Hart v. Ry. Co.,* 112 U. S. 331.

4. ——— PROVISIONS FOR CLAIMS OF LOSS.—A provision in a contract "that no claim for loss or damage shall be allowed or sued for, unless written notice, verified by *affidavit,* shall be given to the general freight agent" (or other officer of a railroad company), has been held reasonable and valid in this state. *Dawson v. Ry. Co.,* 76 Mo. 514.

APPEAL from Audrain Circuit Court, HON. ELIJAH ROBINSON, J.

*Reversed and remanded.*

Statement of case by the court.

This was an action instituted in the circuit court of Audrain county, Mo., to recover from defendant the sum of $150, the value of a mule alleged to have been lost in transit while on the railroad of defendant, between the town of Mexico and the city of St. Louis, Mo., on the 9th day of March, 1881, by reason of defendant negligently failing to furnish plaintiffs with a car of sufficient strength and durability in which to transport the mules shipped.

Defendant answered, setting up a written contract of shipment by which plaintiffs, in consideration of a reduced rate of freight, agreed and stipulated that no claim for damage should be allowed or sued for unless made out in writing, verified by affidavit, and delivered to the general freight agent at St. Louis within five days from the time of removing the stock from the cars. Also, that defendant should not be liable for more than one hundred dollars on account of the loss of any one mule.

It is further alleged in the answer, that said mule was lost while being transported by reason of plaintiffs' overloading the car, by fright of the mule and by crowding of one upon and against another, and defendant further states and charges, that plaintiffs wholly failed and neglected to make a claim for the loss of said mule in writing and verified by the affidavit of the plaintiffs or their agent, and deliver the same to the general freight agent of the defendant at his office in the city of St. Louis, within five days from the time said mules were removed from the cars in St. Louis.

Plaintiffs' reply was that they "*admit that they, by their agent, signed the contract set out in defendant's answer, but say* that neither plaintiffs nor their agent knew anything about the stipulations and limitations contained in said contract in fine print, did not know there was any stipulation therein limiting the amount to be recovered in case of loss to $100 ; that nothing was said by plaintiffs or their agent, or by defendant or its

agent as to the value of said mules, and that said contract was not signed with any view of liquidating the damages to be recovered in case of loss."

The court gave for plaintiff the following instructions:

"1.    The court instructs the jury that it is the duty of railroad companies to keep and furnish for the use of the public, good, sufficient, and safe vehicles or cars for the transportation of goods, merchandise, and live stock over their lines, and if the jury believe from the evidence in this case that the car furnished plaintiffs by the defendant for the transportation of said mules was not reasonably strong and safe to carry such animals, and that defendant knew this, or with reasonable care could have known it, and that, by reason of the insufficient strength of said cars so furnished, one of plaintiffs' mules was lost, then they should find for the plaintiffs.

"2.    The jury are instructed that railroad companies carrying live stock cannot limit their liabilities by contract for losses sustained by reason of their own negligence or misconduct.

"4.    If the jury find for plaintiffs they will assess their damages at the value of said loss of animal at the place of delivery at the time, unless the jury believe that the plaintiffs agreed with the defendant, by contract fairly entered into for the purpose, that the value of said mules should be fixed at one hundred dollars each.

"5.    If the jury find for the plaintiffs, and also find that the contract fixing the value of said mules at one hundred dollars each, was fairly entered into by plaintiffs and defendant, for the purpose of liquidating the amount to be recovered by plaintiffs in case of loss, then they will assess damages at said one hundred dollars and interest at six per cent, from the date of filing this suit."

And for defendant the following instructions:

"1.    And the mere fact that the slats on said car were broken by plaintiffs' mules, and that the mule was lost by reason thereof is not of itself sufficient evidence to entitle plaintiffs to recover.

"2.    If the jury believe from the evidence that the car on which said mules were shipped was in a reason-

ably good condition, and reasonably safe for the ship-
ment of such animals, then the verdict must be for the
defendant, and although the jury believe from the evi-
dence that said mule was lost by the breaking of the
slats on said car.

"3. The court instructs the jury that plaintiffs'
mules were shipped under the contract read in evidence.

" 4. If the jury believe from the evidence that the
car in question was reasonably safe for the shipment of
mules, and that said car was broken and said mule lost
therefrom by reason of the crowding of the mules upon or
against each other, the verdict must be for the defendant.

" 5. The court instructs the jury that before plain-
tiffs can recover they must show by the evidence, to the
reasonable satisfaction of the jury, that said mule was
lost by reason of defects in the car, and not alone by
reason of kicking or crowding of said mules against each
other."

Instruction given by the court of its own motion.

" Unless the jury believe from the evidence in the
case that the claim for the loss of the mule was made in
writing, verified by the affidavits of the plaintiffs, or
some one of them, or by their agent, and delivered to the
general freight agent of the defendant at his office in the
city of St. Louis, within five days from the time of the
removal of said mules from the railroad, the verdict must
be for the defendant, unless the jury further believe
from the evidence in the case that the defendant was,
within said period, notified by plaintiffs of such loss in
some other manner than that specified, and at the time
passed on plaintiffs' claim and made no objection to the
form or manner of such notice."

Defendant's instructions refused :

" 6. The court instructs the jury that if they find
for the plaintiffs, their verdict can in no way exceed the
sum of one hundred dollars.

" 7. Unless the jury believe from the evidence in the
case that a claim for the loss of the mule was made in
writing, verified by the affidavit of plaintiffs, or some
one of them, or by their agent, and delivered to the

general freight agent of defendant, at his office in the city of St. Louis, within five days from the time of the removal of said mules from the car, the verdict must be for the defendant."

Under the instructions of the court, the jury returned the following verdict:

"We, the jury, find for the plaintiffs, one hundred and thirty-seven dollars and fifty cents, including the interest."

After an unsuccessful motion for a new trial, in which the usual grounds were assigned, defendant in due time perfected its appeal.

GEO. S. GROVER, for the appellant.

I. Under the pleadings and evidence plaintiffs were not entitled to recover, as the case falls clearly within the exemptions contained in the contract, and no negligence on the part of defendant was proved. *This* accident was occasioned by the vicious disposition of the animals and was expressly assumed by the plaintiffs. *Clark v. R. R.*, 64 Mo. 440; *Dawson v. Same*, 76 Mo. 514; *R. R. v. Cleary*, 77 Mo. 634; *Dawson v. C. & A. R. R.*, 79 Mo. 296; *R. R. v. Spears*, 66 Georgia 485; *Hart v. R. R.*, 112 U. S. 331.

II. Even if plaintiffs were entitled to recover in this action, the damages were, by the contract, liquidated and fixed at one hundred dollars. This could be done legally. *Harvey v. R. R.*, 74 Mo. 338; *Hart v. R. R.*, 112 U. S. 331.

III. The instructions given for plaintiff were manifestly erroneous. The second and third have no application to this case. The fourth and fifth are in conflict with *Harvey's Case* and *Cleary's Case*, heretofore cited. Besides, the jury were misled by them.

IV. Nor was the effect of these instructions counteracted by the instructions given for defendant. The evil effect of erroneous instructions cannot be cured by correct instructions given at the instance of the opposite party. *Thomas v. Babb*, 45 Mo. 384; *Goetz v. R. R.*, 50 Mo. 472; *State v. Nanert*, 2 Mo. App. 295.

V.    The instruction given by the court of its own motion was also erroneous.    There was no evidence of claim of loss, even substantially, as provided for by the contract, nor any *waiver* of these provisions.    *Tucker v. R. R.*, 54 Mo. 177; *Mayberry v. R. R.*, 75 Mo. 492; *Dawson v. R. R.*, *supra*; *Cleary v. R. R.*, *supra*.

D. T. GENTRY, for the respondent.

I.    The evidence shows that the cars were not safe or secure for proper transportation.    The first, second and third instructions were properly given.    Rev. Stat. Mo. (1879) sect. 862.    *Moore v. Lonboard*, 40 Mo. 491; *Ketchum v. Am. Exp. Co.*, 52 Mo. 390; *Rice v. K. P. R. R.*, 63 Mo. 314; *Kirby v. Ad. Exp. Co.*, 2 Mo. App. 369; *Levering v. Trans. Co.*, 42 Mo. 88.

II.    The fourth and fifth instructions were properly given.    This case does not come within the meaning or spirit of *Harvey v. R. R. Co.* (74 Mo. 538).    There was no intention *in this case* to liquidate the damage in case of loss, as in the Harvey case.    Plaintiff here had to ship under this contract or not at all, and besides paid regular freight rates.    *Union R. R. Co. v. Traube*, 59 Mo. 355; *Sturgeon v. R. R.*, 65 Mo. 569; *Gray v. Packet Co.*, 64 Mo. 47; *Harvey v. R. R.*, 74 Mo. 538; *Stone v. Bennett*, 8 Mo. 41.

III.    The claim was made out and sent in on the 12th or 13th of March—before the five days had expired.

IV.    The instructions, as a whole, fairly presented the law applicable to the testimony in the case, and were not misleading.    *Kurle v. R. R. Co.*, 55 Mo. 476; *Myers v. R. R. Co.*, 59 Mo. 223.

Opinion by ELLISON, J.

Carriers are not responsible for an injury to animals resulting from their own inherent propensities.    *Potts v. Ry. Co.* (17 Mo. App. 394.)    Yet they are bound to provide suitable, safe and secure cars for the transaction of their business.    *Ibid*, and cases cited.

And a contract, though signed by the shipper, agreeing to release the carrier, will not exonerate him from

resulting damage or from his implied duty to furnish suitable means to safely transact his business. *Ib. Co. v. Pratt*, 22 Wall. 123; *Welch v. Ry. Co.*, 10 Ohio St. 65; *I. B. & W. Ry. Co. v. Strain*, 81 Ill. 504.

The court's first instruction for plaintiffs, in connection with those for defendant, is in harmony with the rule above stated. The case in this respect was properly submitted to the jury. Plaintiff's second instruction is a correct abstract proposition, but if it was intended to apply to the contract limit of one hundred dollars, for each animal in case of loss, it was improper as we shall see. The written contract which is admitted in the replication to have been executed by plaintiffs, must be taken to be the contract between the parties, and they will be bound by its provisions in the absence of fraud or imposition. *Moore et al. v. Henry et al.*, decided at this term. Plaintiff's plea that he did not know anything about the stipulations contained in said contract and that he "did not know there was a stipulation therein, limiting the amount to be recovered, in case of loss, to one hundred dollars," is not good. Plaintiffs were bound to examine and ascertain the contents of the contract, and if they accept it without objection they are bound by its terms. *St. L., K. C. & N. Ry. Co. v. Cleary*, 77 Mo. 634; *O'Bryan v. Kinney*, 74 Mo. 125.

There is no pretense of any fraud in this case, and we cannot see why the contract was not fairly entered into, or what room the court had for submitting to the jury, as it did, whether it was a contract fairly made. The execution of the contract being admitted, no fraud, imposition, or mistake being pleaded or proved to avoid it, the court should have limited plaintiffs' right of recovery to one hundred dollars.

It is settled in this state by the decision of *Harvey v. Ry. Co.* (74 Mo. 538), that a common carrier may, by contract, limit the amount of liability, in case of loss, to a specified sum agreed upon. Judge Hough in that case says: "We do not regard a contract limiting the right of recovery to a sum expressly agreed upon by the parties as representing the true value of the property shipped,

as a contract, in any degree exempting the carrier from the consequences of its own negligence. Such a contract, fairly entered into, leaves the carrier responsible for its negligence, and simply fixes the rate of freight and liquidates the damages. This, we think, it is competent for the carrier to do.''

This case is approved in the later one of *Hart v. Ry. Co.* (112 U. S. 331). Justice Blatchford says in that case that ''the limitation as to value has no tendency to exempt from liability for negligence. It does not induce want of care. It exacts from the carrier the measure of care due to the value agreed upon. The carrier is bound to respond in that value for negligence. The compensation for carriage is based on that value. The shipper is estopped from saying that the value is greater.''

Judging from the wording of plaintiff s' fourth and fifth instructions, as to the contract limiting the liability being ''fairly entered into,'' we supposed the circuit court considered it was complying with the rule laid down in *Harvey v. Ry. Co., supra,* as Judge Hough makes use of that language in his opinion. But as applied to this case it is misleading, as the jury would doubtless be led to suppoe they had a right to find it was not fairly entered into. As seen above there was no issue on such a question, and the court should have limited the recovery absolutely to the one hundred dollars.

We do not believe as contended by appellant that the terms of the contract of shipment, as pleaded in defence, covers the loss complained of. Those portions of the contract applicable are as follows: ''*Third.* The party of the second part agrees that as soon as said live stock is placed in said cars, he will see that all the doors and openings in said cars are closed and so fastened, and afterwards kept so closed and fastened, as to prevent the escape of said stock therefrom, and the party of the second part, in consideration of this agreement, hereby releases the party of the first part and all connecting lines from all claims for damage or loss sustained by the party of the second part in consequence of the escape of

any of said live stock through doors and openings in said cars. *Fourth.* It is agreed that neither the party of the first part nor any connecting lines shall be responsible for any damage or injury sustained by said live stock from suffocation while in said cars, or for any injury caused from overloading cars, or from fright of animals, or from the crowding of one upon or against another. *Eleventh.* The party of the second part further agrees to release, and does hereby release the party of the first part and connecting lines from all claims for damage or injury or loss of said live stock, from any defects in the doors of said cars or their fastenings, and also from any injury to said stock, caused from defects in the slats on said cars, or from the manner in which said slats are placed on said cars, and from all injuries which said stock may sustain from kicking or goring each other while in said cars, or from kicking their feet through the slats or sides of said cars."

The loss here is not because the doors and openings were not closed and fastened, and the stock did not escape through the doors and openings (by openings is not meant an opening broken into the car, but those usually found in freight cars). Neither did this loss occur from suffocation, nor was there any injury to the stock caused by overloading, nor was there any by fright or crowding one upon another. So far as the evidence shows the animal was not injured at all. Nor was the loss occasioned by a defect in the doors or fastenings, or in the slats, or from kicking or goring one another. The terms of this contract evidently have reference to injuries happening to the animal by hurting itself in any of the ways provided against, and to its loss by escape through the doors in the cars. This contract does not cover and was not intended to cover a case where an end of a car would come off and permit an escape of the stock. A carrier may well provide against its liability for injuries to live stock arising from their inherent propensities and vicious disposition. Indeed there would be no liability from such cause, in the absence of a contract. *Potts v. Ry. Co., supra.* But such carrier cannot

escape, by contract or otherwise, the duty to furnish cars of sufficient strength to transport the freight it receives. Live stock in their restless disposition may crowd or tramp one another, or may get their legs caught in the slats of the cars, or in fighting may gore each other, etc. Liabilities for such injuries are provided against in the contract. But the car should nevertheless be of sufficient strength to hold them in. The defects in the slats, etc., spoken of in the contract, are such defects from which the stock receive injury. These provisions do not cover an escape of the stock resulting from a defective construction of the cars. As remarked, the contract does not cover an escape of the cattle except through the doors or openings in the car, for these the shipper is required to keep fastened.

Another error appears in the record, and being insisted upon by the appellant, we would for that alone be compelled to remand the cause. As will be seen from the statement, the contract of shipment provides that no claim for loss or damage shall be allowed or sued for, unless written notice, verified by affidavit, shall be given to the general freight agent of defendant at St. Louis, Mo., within five days after the removal of the stock from the cars. Such provisions in contracts are held reasonable and valid in this state. *Dawson v. Ry. Co.*, 76 Mo. 514. There is no evidence whatever of a compliance with this provision of the contract. The only reference to it is in the testimony of Joseph Brown. He says on that subject: "After unloading the mules I kept them in the pen and went to see McBeth, who I was told was the proper party to go to, as the freight agent of the defendant. He told me to sell the mules and make out a claim, and if they were in fault they would pay for it. I came home about the 11th or 12th of March, and made out a claim as soon as I came back." On cross-examination he stated that "the stable men at the stock yards told me that the man I wanted to see was McBeth. He told me to make out a claim, swear to it and send it in, and if the company was at fault it

would pay for the mule. I made it out and sent it to him.''

There is nothing in this testimony to show that McBeth was defendant's freight agent, or that he was authorized to bind the company by a line of conduct waiving the terms of the contract. The declarations of McBeth himself are not sufficient to establish his agency. For if it were so, it could readily be seen an agency might be created by the mere false statement of any adventurer, without knowledge or authority of the principal. The fact that the ''stable men at the stock yards'' told him to see McBeth will certainly not be thought sufficient to establish an agency. It is not even stated that this man McBeth was found in defendant's offices, or that defendant knew of him, or that he was in their employ. There is nothing from which we can infer he was an agent of defendant.

The judgment is reversed and the cause remanded. All concur.