BY THE

## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

MARCH TERM, 1895.

62    1
77  628
149m322
s149m324

WILLIAM A. RICHARDSON, Appellant, v. THE CHICAGO & ALTON RAILROAD COMPANY, Respondent.

Kansas City Court of Appeals, April 1, 1895.

1 **Carriers:** LIVE STOCK CONTRACT: DEFINITIONS: HORSE. In a contract for the shipment of live stock, a limitation provided that the value did not exceed $100 for each horse or mule, etc. *Held,* that the word horse, as used in such limitation, will not include the Jack shipped under the contract. The cases *pro* and *con* considered.

2. **Construction:** LANGUAGE, HOW CONSTRUED. The language and terms of the contract will be understood in the ordinary, proper sense.

3. **Carriers:** LIVE STOCK CONTRACT: CONSTRUCTION: COMMON LAW. The terms in a contract in derogation of common law—that is, establishing for the particular instance a rule contrary to what the law would provide—are, like provisions in the statutes in derogation of the common law, construed strictly.

4. ——: ——: ——: ACTION OF PARTIES. In cases of doubt, the action of the parties, when made to appear, will determine their intentions and dissolve the doubt; as that, while a horse or mule was shipped by defendant at an arbitrary weight of two thousand pounds, the jack in question was based on a weight of three thousand pounds.

5. ———: ———: NOTICE. A contract of shipment required the shipper, within five days after loss or damage, to give notice, in writing, of his claim. *Held*, that in this case as the shipper could not, within five days, ascertain the entire extent of his loss, he was not required to comply with the notice. *Held, further*, since defendant's servants removed the jack to a distant point and killed him, it is unreasonable to require notice to be given.

*Appeal from the Randolph Circuit Court.*—HON. JOHN A. HOCKADAY, Judge.

REVERSED AND REMANDED.

*R. B. Caples* and *A. H. Waller* for appellant.

(1) The court erred in ruling as a matter of law that the eighth clause of the contract, which specifies horses and mules only, includes jacks also, and upon this theory in giving plaintiff's instruction number 5, for the reasons: *First.* "That the terms of every written instrument are to be understood in their plain, ordinary and popular sense." *Rubey v. Coal and Mining Co.*, 21 Mo. App. 167; Bishop on Contracts [Ed. 1887], sec. 404, foot page 157; *Weil v. Schwartz*, 21 Mo. App. 380. *Second.* Contracts in derogation of law, such as limiting carriers' liability, are strictly construed, and nothing can be claimed thereunder, beyond what is plainly within the words. Bishop on Contracts [Ed. 1887], sec. 410, 411, foot page 159.

*George Robertson* for respondent.

(1) The contract covers the animal shipped. The appellant contends that the limitation clause does not refer to the jack shipped. The word in the eighth clause is "horse." An ass is a horse as used in this contract. 9 Am. and Eng. Encyclopedia of Law, 759; *Richardson v. Duncan*, 2 Heisk. 222; *Railroad v. Brubaker*, 47 Ill. 452; *Brown v. Bailey*, 4 Ala. 413; *Rail-*

*road v. Cole*, 50 Ill. 413. A proper construction of the contract will require that the word "horse" shall include the animal shipped. Lawson on Contracts, chap. 10. (2) The claim for damages not having been made within five days, according to the terms of the contract, the plaintiff can not recover. *Brown v. Railroad*, 18 Mo. App. 568; *Dawson v. Railroad*, 76 Mo. 514; *McBeath v. Railroad*, 20 Mo. App. 445; *Rice v. Railroad*, 63 Mo. 314.

ELLISON, J.—Plaintiff was the owner of a jack, which was shipped to him over defendant's road by one Martin. The jack was crippled by the negligence of defendant, and was taken in charge by defendant's servants and carried to a distant point on its road, where such servants killed him. The value of the jack was shown to be $1,000. Under an instruction of the court, based upon a clause of the contract alleged to limit the amount of liability for the loss of the jack, the jury returned a verdict for plaintiff for $100. Plaintiff appealed.

In the contract of shipment, which was signed by Martin, who shipped the animal to plaintiff and for plaintiff, the following clause appears: "Eight. It is understood and agreed that the stock shipped under this contract is transported at the above rates, upon the representation of the second party that its value does not exceed $100 for each horse or mule, $50 for each bull, cow, or ox, and $20 for each sheep, calf, or hog; and the first party shall not be liable for loss or damage to said stock in excess of those sums, nor for any sum in excess of their fair cash value at the time and place of shipment."

It was under this clause that the court limited plaintiff's recovery to $100. The point for decision is, whether the jack shipped is covered by the terms of

the clause quoted. If the clause includes the jack, and no objection appears to the validity of the contract, the instruction of the court, limiting the defendant's liability, was correct. Our opinion, however, is that the clause does not apply to a jack. Counsel for defendant contend that the word "horse" includes the jack. It is true that horse is a generic term and will include asses, zebras and the like footed animals. But we are satisfied the word was not so used in this contract. To us it is clear that it was used in its ordinary sense and acceptation. It was used in a contract and bears upon the contractual relation between the parties, rather than as a designation of a genus. "The language and terms of the contract will be understood in the ordinary, popular sense." Bishop on Contracts, sec. 404. Certainly, in popular acceptation, a jack is not a horse. If a horse buyer advertises to purchase a number of horses, does he expect jacks to be brought to him? If A sells to B his choice out of the horses in A's pasture for $100, would anyone suppose that B could select A's $1,000 jack? Besides, this contract, on its face, shows that the word "horse" was not being used in its generic breadth. It limits its meaning by its own specification. It reads: $100 for each horse or mule, $50 for each bull, cow, or ox, and $20 for each sheep, calf, or hog." If general terms were intended to be used, the one word "cattle" could have been utilized to cover all these. If the word "horse" was used, as defendant contends, then why mention a mule? In *Miller v. Hahn*, 84 N. C. 226, the animals in question in that case were described in two conflicting bills of sale. In one the description was, "one bay horse, also one black horse and one gray mare." This was held not to cover a bay mare sold by the subsequent bill of sale, for the reason that the instrument itself distinguished between a horse and a mare.

Again, the contract is one limiting a common law liability; and Bishop, in his work on Contracts, secs. 410, 411, says: "Terms in a contract in derogation of law—that is, establishing for the particular instance a rule contrary to what the law would provide—are, like provisions in a statute in derogation of the common law, construed strictly. For instance,—it is so when a common carrier undertakes to limit his liability by a special agreement with the party; he can claim nothing beyond what is plainly within the words."

Again, it is the well recognized rule that, in any cases of doubt, the action of the parties when made to appear, will determine the intention of the parties and will resolve the doubt. In this case, the parties seem not to have intended that the word "horse," as used in the quoted clause, should mean jack; or else they would have named "a horse," as the animal shipped, instead of a jack, as they have done. It likewise appears in this case that a horse or mule is shipped by defendant at a rate based on an arbitrary weight of two thousand pounds, whereas the shipment of this jack was based on an arbitrary weight of three thousand pounds.

Counsel has cited us to some authority in support of the position taken for defendant, which, in our view, does not militate against what we have said. One of these is the case of *Railway Co. v. Brubaker,* 47 Ill. 462. An ass was killed by the railway company by reason of not having erected fences along the sides of its road; the statute requiring railroad companies to erect and maintain fences "sufficient to prevent cattle, horses, sheep, and hogs from getting on such railroad." The court first stated that the statute is not a penal statute and is, therefore, not to be strictly construed, but that it is remedial and was intended to protect domestic animals liable to stray onto railway tracks, and, there-

fore, will include a jack. The other case is that of Richardson v. Duncan, 2 Heisk. 220, where the supreme court of Tennessee held that an ass was not liable to execution under the statute exempting a "horse, mule or yoke of oxen." The ass was shown to be the only work animal the owner had and that he was used for working purposes, and he was declared to be within the spirit and object of the law.

Those cases construing public statutes, which were designed to cover certain well known public purposes, are clearly not applicable to the terms of a private contract. Those statutes were declared to be such as could receive a latitudinous construction, while the contract before us must be strictly construed, and must be looked upon in the light of the intention of the parties, as appears from the whole paper.

And it is the whole paper upon which counsel makes a point in behalf of defendant, viz: that the entire contract shows the jack was intended to be included in the specification of animals. We do not think so. The contract shows that it is one for general use, to cover the shipment of any of the animals mentioned. It refers to them as "stock" and as "animals." It refers to the animals crowding, or injuring each other; to feeding, watering, unloading, etc. In no way do any of these expressions tend to show that the jack was intended to be included in any of the limitations specified in the section.

2. The next point was ruled against defendant in the trial court, and, we believe, correctly. It relates to the question of notice. There is a provision in the contract requiring plaintiff, in case of loss or damage, "within five days after said loss or damage has accrued, (to) give notice in writing of his claim therefor." It will be observed that the contract does not require a notice within five days after the injury occurs, but after the

Richardson v. The C. & A. R'y Co.

loss or damage has accrued. The evidence shows that, after the injury happened, the ass was taken by defendant, without direction from plaintiff, to a distant point out of plaintiff's reach, and killed. It does not appear that plaintiff had an opportunity of seeing or knowing, except by hearsay, of just what had happened to the animal. There is no testimony to show that plaintiff knew, within five days, what the injury was, or its entire extent. As soon as he was advised of the injury, he proceeded to give the written notice. This was after the five days had elapsed, counting from the date of the injury.

Since defendant's servants took charge of the animal and conveyed him to a distant point and there killed him, we can not see why plaintiff should be required, under such circumstances, to give any notice. Such notices are a limitation on defendant's common law liability. They will be upheld, because they are deemed to be reasonable. The object in requiring them is that defendant may have an opportunity of inquiring into the alleged loss, so that unjust claims may be thwarted. *Brown v. Railroad*, 18 Mo. App. 568; *Rice v. Railroad*, 63 Mo. 314. In the latter case, it is said that such provisions should be reasonably and justly construed in their application to each case as it arises. It seems to us apparent that defendant's own conduct made a notice wholly unnecessary, and that it would be altogether unreasonable to require that it should be given. The judgment will be reversed and the cause remanded. All concur.