RICHARDSON v. CHICAGO AND ALTON RAILROAD COMPANY, Appellant.

149    311
96a ³357
149    311
101a ⁵453

Division One, April 14, 1899.

1. **Common Carrier**: INJURY TO STOCK IN TRANSITU: NOTICE. Where the contract of shipment provided that the owner of stock in case of injury or loss in shipment should notify the railroad company within five days "after said loss or damage has occurred" and after the injury the animal was in charge of the railroad's employees, and the delay in giving the notice was caused by their conduct, and when the shipper learned of the loss he promptly notified the company, it would be unreasonable and unjust to require that he should have given the notice sooner than he did, or to deny him the right to recover simply because the notice was not actually given within the five days.

2. ———: ———: TIME WITHIN WHICH SUIT SHALL BE BEGUN: STATUTE. Any provision of a shipper's contract which limits the time in which a suit for injury to stock shall be brought, if that limit is less than the time fixed by statute, is void. Nor is such statute unconstitutional.

Richardson v. C. & A. R. R. Co.

3. ———: WORDS IN CONTRACT: STRICTLY CONSTRUED. When a common carrier undertakes to limit his liability by a special agreement with the shipper, he can claim nothing beyond what is plainly within the words employed in the contract.

4. ———: ———: ———: JACK DOES NOT MEAN HORSE. The shipper's printed contract with a railroad company, which had undertaken to ship his jack from one town to another, provided that the company would not be liable in case of loss or injury in excess of $100 for each "horse or mule," but said nothing about its liability in case the animal was a jack, although the contract stated the animal shipped was a "jack." *Held*, that the word "horse" used in the contract could not be taken in a generic sense and made to include the jack, and therefore plaintiff's judgment was not limited by the contract to $100, but to the actual damage which the jury found to be $1,000.

5. ———: LIMIT OF LIABILITY: CONSIDERATION. Where a common carrier limits its liability at a certain maximum sum in case of loss of the stock shipped by it, it must appear that there was a consideration, such as a reduction in the freight charges, for the limited valuation, before it can reduce the damage to the maximum amount fixed by the contract.

*Appeal from Randolph Circuit Court.*—HON. JOHN A. HOCKADAY, Judge.

AFFIRMED.

GEO. ROBERTSON for appellant.

(1)   J. B. Martin had general authority to ship the jack from Armstrong to Moberly, and was therefore empowered to make the contract of shipment read in evidence.   Nelson v. Railroad, 48 N. Y. 499; New York v. Railroad, 3 Wall. 107; Lawson on Carriers, secs. 223-225; Railroad v. Morrison, 19 Ill. 130; Owen v. Brockschmidt, 54 Mo. 290.   (2)   The contract covers the animal shipped.   In addition to the printed parts, it has written on the face of it, "valuation, $100."   The word in the eighth clause is, "horse."   An "ass" is a horse as used in this contract.   9 Am. and Eng. Ency. of Law, 759; Richardson v. Duncan, 2 Heisk. 222; Railroad v. Cole, 50 Ill. 413.   A proper construction of the

contract will require that the word "horse" shall include the animal shipped. It was the purpose of the contract to provide for the animal shipped, and it is immaterial by what name it is called. Lawson on Contracts, chap. 10. (3) The claim for damages not having been made within five days, according to the terms of the contract, the plaintiff can not recover. Brown v. Railroad, 18 Mo. App. 568; Dawson v. Railroad, 76 Mo. 514. The shipper is bound by his contract. O'Bryan v. McKinney, 74 Mo. 125; Railroad v. Clary, 77 Mo. 634. (4) In 1887 (Acts of 1887, p. 99, R. S. 1889, sec. 2394), an act was passed that any contract hereafter made tending to limit the time in which any suit may be instituted shall be null and void. Our contention is, that this condition of the contract is valid and that the act of 1887 is unconstitutional. Heretofore in this State such conditions of limitations have been held good. Glass v. Walker, 66 Mo. 32. By all courts such conditions have been held to be wise and provident and justified on the considerations of public policy. 13 Am. and Eng. Ency. of Law, 690; 11 Am. and Eng. Ency. of Law, 349-351; 1 Cooley's Blackstone, star page 139. The act in question is violative of article II, section 4, Constitution of Missouri, preamble Constitution of the United States, and fifth and fourteenth amendments to the Constitution of the United States. State v. Loomis, 115 Mo. 307; State v. Julow, 129 Mo. 337; Commonwealth v. Perry, 155 Mass. 117; People v. Gilson, 109 N. Y. 389; Ritchie v. People, 155 Ill. 98. (5) The court erred in refusing defendant's instructions 5, 6, 7 and 8, for, if plaintiff is entitled to recover at all, he is, by the terms of the contract, limited to the sum of $100. Hutchinson on Carriers, sec. 249; Hart v. Railroad, 112 U. S. 331; Ins. Co. v. Trans. Co., 117 U. S. 322; McFadden v. Railroad, 92 Mo. 343; Canover v. Express Co., 40 Mo. App. 37; Hance v. Railroad, 56 Mo. App. 482; Railroad v. Harwell, 91 Ala. 340; Railroad

v. Spears, 66 Ga. 485; Hill v. Railroad, 144 Mass. 284; Railroad v. Perkins, 25 Mich. 329; Duntly v. Railroad, 20 Atl. 327.

A. H. WALLER and R. B. CAPLES for respondent.

(1)   The contract of shipment executed by Martin and Betts is not supported by any consideration, nor authority to execute the same from plaintiff, and is therefore void, for the following reasons:   First.   The freight rate charged was the regular first class rate.   It is designated as "tariff" in the contract and does not purport to be a reduced rate, nor was it, in fact, a reduced rate.   It was the only legal rate offered shippers.   The higher rate, pleaded and proved by defendant, is excessive under the statute laws of this State and is, therefore, illegal.   Under our statute the maximum freight rate for live stock in car load lots is $10 per car, for the first twenty-five miles.   R. S. 1889, secs. 2674 and 2675. Nor can a railroad company legally charge more for the transportation of less than a car load of freight, than it charges for a car load.   R. S. 1889, sec. 2635; Kellerman v. Railroad, 136 Mo. 180; Paddock v. Railroad, 60 Mo. App. 333; Wilson & Aull v. Railroad, 66 Mo. App. 390; Kellerman & Son v. Railroad, 68 Mo. App. 260.   Second. Because Martin's agency was limited.   It authorized him to "ship the jack," and nothing more.   This simple commission did not authorize him to enter into a written agreement, by the terms of which the value of said jack was limited to one-tenth of its actual value.   In this regard the contract was unreasonable and unconscionable and plaintiff ought not to be bound thereby.   1 Am. and Eng. Ency. of Law, 351-361; Sewing Machine Co. v. Railroad, 70 Mo. 672; McFadden v. Railroad, 92 Mo. 349.   (2)   Appellant's second contention, to wit:   That the release clause in the contract of shipment, which specifies horses and mules only, includes jacks also,

can·not be sustained, for the reasons: First. Because on
the former appeal of this cause to the Kansas City Court of
Appeals, this point was expressly decided adversely to ap-
pellant's contention, and such question is, therefore, *res
adjudicata.* Richardson v. Railroad, 62 Mo. App. 3; Dunk-
lin Co. v. Chouteau, 120 Mo. 583; Chouteau v. Gibson, 76
Mo. 38.    Second.    Because section 8 of said contract indi-
viduates certain animals, upon which a maximum ·value is
fixed, and other animals of different kinds can not be in-
cluded in the terms therein used, since the terms of every
written instrument are to be understood in their plain, ordi-
nary and popular sense.    Rubey v. Mining Co., 21 Mo. App.
167; Bishop on Contracts (Ed. 1887), sec. 404.    Contracts in
derogation of law, such as limiting carrier's liability, are
strictly construed, and nothing can be claimed thereunder,
beyond what is plainly within the words.    Bishop on Con-
tracts (Ed. 1887), secs. 410 and 411.    Third.    And for the
lack of consideration, said contract does not bind plaintiff.
(3)    The jack was injured at Higbee, while in defendant's
possession, and it failed to forward the animal to its destina-
tion at Moberly, Missouri, near which point plaintiff resided,
and where he could have had timely notice of the injury to
said animal, and could have made said claim within five days.
And, on the day the animal was injured, defendant was
advised and informed that it was the property of plaintiff,
who resided near Moberly, and was further directed to notify
plaintiff at said point, of the injury to the jack, but failed
and neglected to do so.    And further, defendant failed
altogether to deliver said animal to plaintiff, and without
authority so to do, sent the car containing the crippled jack
to Slater, a point on its road remote from plaintiff's place of
residence and there killed him.    Plaintiff had no knowledge
of the injury to said animal until more than five days had
elapsed after said injury and was prevented from having said
knowledge by reason of defendant's said negligent and

wrongful acts and conduct. And defendant, for said reasons, is estopped from claiming that it was entitled to notice of said injury within five days  thereafter, or from pleading the same in bar to this action.    Richardson v. Railroad, 62 Mo. App. 3; Baker v. Railroad, 34 Mo. App. 98; Wilson v. Railroad, 23 Mo. App. 50; Rice v. Railroad, 63 Mo. 314.    (4) Appellant's fifth point is that section 2394, Revised Statutes 1889, is unconstitutional. This contention has been recently decided adversely to appellant's contention in the case of Karnes v. Ins. Co., 144 Mo. 413.

ROBINSON, J.—Plaintiff recovered judgment against defendant for $1,000 as damages for negligently killing a jack belonging to plaintiff while said jack was being transported on defendant's railroad; and defendant appealed.

This action was originally brought in the circuit court of Howard county, from which court it was transferred on change of venue to the circuit court of Randolph county. At the September term, 1894, of said court, judgment was rendered for plaintiff in the sum of $100. Whereupon plaintiff appealed to the Kansas City Court of Appeals, where the judgment was reversed and the cause remanded for a new trial. The opinion of the appellate court is reported in 62 Mo. App. 1.

The petition alleged defendant to be a common carrier, and its incorporation, and that as such it undertook on the fifth day of April, 1892, to transport plaintiff's jack from Armstrong to Higbee at the usual tariff rate; that by defendant's negligence the jack was maimed and killed, to his damage in the sum of $1,000, for which he asks judgment.

The answer admitted the incorporation of defendant; that it was a common carrier, and the shipment of the jack, but denied all other allegations in the petition. The answer further set up a special contract between J. B. Martin, the consignor of said jack, and defendant, and alleged as contributory negligence that the animal was insecurely fastened

in the car, and was not provided with proper bedding upon which to stand. It was further averred that by agreement the valuation of the jack in question had been fixed at $100, and that the shipment had been charged for on a rate based upon such valuation; that had a higher valuation been placed upon the jack, a higher rate could and would have been charged. The answer also averred that by such contract it was stipulated that plaintiff in case of loss or damage, while the animal was in defendant's possession, should notify defendant thereof in writing within five days thereafter or be forever barred, and pleaded a failure to give such notice; that it was further agreed by the terms of said contract that a failure to commence suit against defendant in case of loss within sixty days after the same occurred should bar the action, and that suit had not been commenced until after the said sixty days had elapsed.

Plaintiff replied, denying the new matter contained in defendant's answer, and averred that if Martin entered into the agreement alleged, such action on his part was without his knowledge or consent and beyond the authority of his agency; and further claimed a waiver by defendant of the requirement in the contract of shipment that written notice should be given within five days after such loss or damage, and that the actions and conduct of defendant were of such character as to estop defendant from setting up the failure to give written notice as a defense in bar of this action.

The record shows the value of the jack to have been $1,000; that early in March, 1892, plaintiff, who was a dealer in horses and jacks, had a sale at his farm near Moberly, Missouri, at which sale one J. B. Martin, who lives at Armstrong, Missouri, a station on the line of defendant's railroad, purchased a young jack; that on the third day of April, 1892, Martin went to Moberly and there consummated a trade with plaintiff whereby he received an aged jack, giving in exchange therefor the young jack previously purchased of the

plaintiff. Martin also at this time bought a horse of plaintiff, and shipped both of said animals by rail from Moberly to Armstrong.   Plaintiff instructed Martin to ship the jack he received in the trade to him and furnished him with a halter with which to tie the jack in the car.   Upon his arrival home Martin loaded the jack traded to plaintiff in a car furnished by defendant company, and tied him in one end of said car under the direction of defendant's station agent, and signed a contract of shipment as consignor.   This was the usual live stock contract furnished by the railroad to its station agents to be used in the shipment of stock, and contained the following provisions material to an understanding of this controversy.

"Eighth.   It is understood and agreed that the stock shipped under this contract is transported at the above rates upon the representations of the second party that its value does not exceed one hundred dollars for each horse or mule, twenty dollars for each bull, cow or ox, and twenty dollars for each sheep, calf or hog; and that the first party shall not be liable for loss or damage to said stock in excess of these sums, nor for any sum in excess of their cash value at the time and place of shipment.

"Ninth.   And it is further mutually agreed that should any loss or damage of any kind occur to the property specified in the contract, while said property is in the possession of the first party, the said second party shall, within five days after said loss or damage has occurred, give notice in writing of his claim therefor to the said first party.   If the property is consigned to stock yards such notice shall be given to the live stock agent of the first party at said yards, or to the general freight agent, or nearest agent of the first party, and before the stock shall have been removed from said yards, or mingled with other stock.   In all other cases the said second party shall give such notice to the general freight agent or nearest agent of said first party, and unless

such notice is given within five days, said loss or damage shall not .be recoverable, and a suit thereon shall be forever barred; and the second party hereby so expressly stipulates and agrees. And any suit against said first party for the recovery of the loss or damage to the property herein specified shall be commenced within sixty days next after such loss or damage shall have occurred, or be forever barred; and should any suit be commenced against said first party after said sixty days, the lapse of time shall be taken as conclusive evidence against the validity of such claim, any statute of limitations to the contrary notwithstanding; and there shall be no waiver of the aforesaid time within which said claim shall be made or within which suit shall be commenced, unless the first party expressly agrees in writing to waiving the same; and the second party hereby so expressly stipulates and agrees.

"And this agreement further witnesseth; that the second party has this day delivered to said first party in its cars at the above named station (Armstrong, Missouri), one head of jack, consigned to W. A. Richardson, Moberly, Missouri," etc.

Martin and the station agent had no conversation about the terms of shipment, and no statement was made by Martin as to the value of the jack, and the agent made no inquiry as to its value. When the train which carried the jack reached Higbee, defendant's employees in charge of said train undertook to set the car containing the jack on a side track or Y by means of what is termed a "flying switch." The evidence tends to show that said car was run in on said side track or Y at high speed; that because of some defect in the brake attached thereto the brakeman was unable to control the car, and jumped off. The car then collided with other cars standing on the side track, with such force as to break a draw head and knock the standing cars back twenty feet. When the car containing the jack was opened it was found that the rope

attached to the halter with which he was tied had been broken, and that the jack was lying in the middle of the car, with his head in an opposite direction to that in which he was originally placed in said car, and that at least two of his legs were broken and so injured as to make him valueless. The car with the jack in it was left standing at Higbee about a day, and then hauled to Slater by defendant company, where the jack was killed by defendant's employees. Martin was notified of the injury to the jack the same day the accident happened and immediately went to Higbee, and found the jack in the car with his legs broken. He then informed the defendant company's agent at Higbee that the jack was the property of plaintiff, and advised said agent to notify plaintiff of the condition of said jack. It does not appear that the agent ever communicated any knowledge of the injury to the plaintiff, but several days later, more than five days after the injury occurred, plaintiff received a letter from Martin, informing him of the shipment of and injury to said jack. This letter was received late in the evening, and early the next morning plaintiff went to the freight office at Moberly, where the information contained in Martin's letter was confirmed. Plaintiff then went to Higbee, and upon learning that the jack had been sent to Slater, proceeded to Armstrong, where a written claim for damage was made out and left with the agent at that place. This claim was made within twenty-four hours after he first learned of the injury to his jack.

I.    The first ground of error urged by defendant for reversal is the failure of plaintiff to notify defendant of the injury according to the provisions of the contract of shipment. The rigid exactions of the common law which held common carriers liable as insurers and made them responsible for any loss or damage to property taken by them for transportation, except when such loss or damage was caused by the act of God or the public enemy, have been so abrogated to

to permit carriers to contract with shippers, limiting such responsibility, and to agree upon the method by and the time within which such shippers who have sustained loss or damage shall notify the carrier thereof. But this rule does not go to the extent of permitting the carrier to exempt himself by contract from losses occasioned by his own negligence, but makes such contracts valid and binding providing they shall be reasonable and just. And such provisions must be construed according to the facts in each particular case. The purpose of such agreements is to promptly apprise the carrier of whatever damage is claimed in order that the carrier may have any early opportunity to inquire into the facts of such loss and more readily protect himself against unjust claims. In the case of Rice v. Railroad, 63 Mo. loc. cit. 319, the rule is thus stated: "It is not unreasonable for the carrier to stipulate with the shipper, that before claim for damages will be allowed he shall give proper notice, in writing, of his claim, at or before the unloading of the stock, or in such time thereafter as will afford the carrier an opportunity of inspecting the stock before they are commingled with other cattle, slaughtered, sold or reshipped, and thus protect himself from fictitious and unfounded claims. While, upon grounds like these, such special agreements are valid and binding, when they were reasonable, they should be reasonably and justly construed in their application to each case as it arises." The doctrine so announced was quoted with approbation in the case of Dawson v. Railroad, 76 Mo. 514.

In the case at bar, the evidence shows that after the injury occurred the animal whose loss is sued for, was not taken to the place of destination where plaintiff might have had timely notice of its injury and would thus have been enabled to make out his claim within the five days specified in the contract, but was hauled by defendant company, without plaintiff's knowledge or direction to a point beyond his

reach, and there killed.    It will be observed that such notice is not required to be given within five days after the injury, but "after said loss or damage has occurred."    It does not appear that plaintiff knew, or had any means of knowing, what had happened to the jack, or the extent of the injury, within five days after the accident occurred.    As soon as he ascertained his loss he promptly gave defendant notice.    During this interval the animal in question was in charge of defendant's employees, and defendant had all opportunity of knowing and did know the cause of the injury and the extent of its liability therefor.    It seems to us that any delay in the giving of the notice was caused by defendant company rather than through the fault of the plaintiff, and it would be unreasonable and unjust to require that plaintiff should have given such notice sooner than he did.    [Brown v. Railroad, 18 Mo. App. 568; Richardson v. Railroad, 62 Mo. App. 1.]

II.    Counsel for defendant next assigns for error that under the ninth paragraph of the contract plaintiff is required to bring his action for damages within sixty days after the injury happened.    This contention is in direct conflict with section 2394, Revised Statutes 1889, which is as follows:    "All parts of any contract or agreement hereafter made or entered into which either directly or indirectly limit or tend to limit the time in which any suit or action may be instituted, shall be null and void."    Counsel maintains this section to be unconstitutional, but we find no merit in his position.    The legislature has authority to adopt a uniform and genreal rule fixing the time within which actions of the same class may be brought, and to prohibit contracts abridging that right.    The constitutionality of this section was recently before this court in the case of Karnes v. Ins. Co., 144 Mo. loc. cit. 418, where it was said that:    "The legislature, to prevent the unfair and unreasonable operation of such contracts, established as the policy of this State a uniform rule as to the time within which suits of the same class may

be brought, and declared that this should not be changed by agreement. This amounted in effect to a declaration that the statute of limitations fixes a reasonable time for such purpose and hence special contracts for a different limitation should be prohibited. We think it is within the power of the legislature to adopt this rule and that it is our duty to enforce it. Many of the States have similar statutes, . . . . and whenever the question has been before the courts, the right to pass such laws has been maintained, and stipulations limiting the time to sue, in violation of such statutes, declared void." The decision in the Karnes case effectually disposed of the cases cited in defendant's brief on this point.

III. It is claimed that under the eighth paragraph of the contract no larger recovery than $100 can be had. In order to sustain this contention it would be necessary to give the word "horse" a larger meaning than its commonly accepted interpretation would convey. This clause is a limitation of the common law liability respecting carriers, and while it is within the province of the carrier to contract with the shipper as to the amount of the recovery in case of loss or damage, yet in construing such an agreement the words used can not be given a broader meaning than that conveyed by commonly accepted usage. The terms of every written instrument are to be understood in their plain, ordinary and popular sense [Bishop on Contract, section 404]. In sections 410-411 of the same work, this author says: "Terms in a contract in derogation of law—that is, establishing for the particular instance a rule contrary to what the law would provide—are, like provisions in a statute in derogation of the common law, construed strictly. For instance, it is so when a common carrier undertakes to limit his liability by a special agreement with the party; he can claim nothing beyond what is plainly within the words." Clearly in popular acceptation a jack is not a horse. One who goes to a liveryman and engages a horse to ride would not expect to have a jack brought

out for his use.        Nor would one who advertised a sale of jacks expect that prospective horse buyers would attend. The contention of counsel for defendant that the word "horse" is to be taken in a generic sense and made to include the jack shipped over defendant company's road is untenable. Horses and jacks are different animals, and the distinction is recognized by defendant in its freight classifications. Horses and mules were taken at two thousand pounds each, while stallions and jacks were charged for as weighing from three thousand to four thousand pounds each.        The fixing of arbitrary weights for these animals, and the very fact that the term "jack" is employed instead of "horse" in naming the animal shipped indicated that the parties did not use the term "horse" in a general sense so as to include all quadrupeds of a similar description.        [Richardson v. Railroad, 62 Mo. App. 1.]        Besides we do not find that there was any consideration for this limited valuation of the jack in question. The shipment was charged for at the regular and usual first-class tariff rates used by defendant, and no reduction thereof was made.        In all cases where such limited valuations have been held to be binding, such valuations have been fixed in consideration of some special or reduced rate. In this case there was no such special or reduced rate.        This rule has been repeatedly announced in this State.        [McFadden v. Railroad, 92 Mo. 343, and cases cited; Kellerman v. Railroad, 136 Mo. 177, and cases cited.]

In our opinion the circuit court properly declared the law, and no error was committed in refusing the instructions asked by defendant and its judgment is therefore affirmed. BRACE, P. J., MARSHALL and VALLIANT, JJ., concur.