Horace Williston *et al. vs.* T. P. Mathews *et al.*

Argued Nov. 10, 1893.   Affirmed Dec. 7, 1893.

No. 8412.

A certain contract construed.

M. had contracted to build an ore dock according to certain plans, and to complete the same by the 1st of May. The timbers required for the work were of peculiar and unusual dimensions, and, in order that the workmen be kept employed, it was necessary that the timber be furnished at stated times; and, as the dock had to be built in and over the water, it was necessary, to an advantageous performance of the work, that it be done while the ice remained on the water. In January, W., with knowledge of these facts, agreed to furnish M. all the timber for the work in three monthly installments, his contract containing a provision that, "in the event of his inability to furnish all or any of said timber as proposed above, he agreed to allow M. to purchase the same in the open market, and charge the necessary expense to his [W.'s] account, the same as if he himself had purchased it." *Held*, that this did not amount to a stipulation for an exclusive measure of damages in case of a breach of the contract.

Appeal by plaintiffs, Horace Williston, James Charnley, William McKinley and A. S. McKinley, from an order of the District Court of Lake County, *J. D. Ensign*, J., made May 16, 1893, overruling their demurrer to the second counterclaim in the answer.

The defendants, T. P. Mathews and P. C. Krech of Minneapolis, entered into a contract December 31, 1891, with the defendant, the Duluth and Iron Mountain Railroad Company, to construct for it an ore dock No. 4 in Agate Bay at Two Harbors, Lake County, Minnesota, and complete the same on or before May 1, 1892. The plaintiffs afterwards on January 9, 1892, entered into a contract with Mathews and Krech to furnish for the work free on board cars at their mills in Duluth 1,347,284 feet of timber, board measure, one third by February 10, one third by March 8, and the balance by April 10, 1892. In case of their inability to furnish all or any part of the timber they agreed to allow Mathews and Krech to purchase the same in open market and to charge the necessary purchase price to plaintiff's account. Mathews and Krech agreed to pay for the timber $15 per thousand feet, board measure. Plaintiffs furnished

the timber and were paid $17,696.63. They filed a lien on the ore dock for the residue $2,512.63, and brought this action to foreclose it.

The defendants, Mathews and Krech, answered and for a second counterclaim stated that plaintiffs were fully informed of the provisions of the contract with the Railroad Company; that the timber required was of peculiar and unusual dimensions; that it was necessary to have certain parts of the timber on hand at certain times in order that the work might progress without delay; that over one hundred men were necessarily employed in the work of construction; that plaintiffs failed to furnish the timber as fast as agreed; that up to and including March 8, 1892, they had furnished only 607,063 feet; that up to and including April 10, 1892, plaintiffs had furnished only 1,054,108 feet, including timber which these defendants were able to find and buy elsewhere and charge to their account; that to construct the dock advantageously and with the least cost and delay, it was necessary to do it while the ice covered the bay; that by the delay and neglect of plaintiffs in furnishing the timber, their workmen could not be constantly employed, or the work completed before the ice melted in the Spring, or before June 1, 1892; that by reason of the delay, they sustained damages to the amount of $6,000, and they demanded judgment for the balance of this amount after deducting plaintiff's claim.

Plaintiffs demurred to this counterclaim on the ground that the provision in their contract allowing the contractors in case of delay to buy the timber in open market, limited the damages to the difference between the market and the contract prices, which difference, if any, the counterclaim did not disclose. The trial Court overruled the demurrer and the plaintiffs appeal.

*Walter Ayers,* for appellants.

The damages which ordinarily flow from a failure to deliver goods as contracted for, is the difference between the market price of the goods, and the contract price. *Liljengren F. & L. Co.* v. *Mead,* 42 Minn. 420.

If the contract were silent upon the question of damages, the plaintiffs might be held liable for the special damages sustained. But it is not silent. The language is, that plaintiffs will allow defendants

to buy elsewhere in case of their failure to furnish the timber at the specified time. It places a limit on what the defendants may do in case of default. It fixes one rule of damages in case of a breach. The defendants seek to apply another and additional rule involving a ruinous liability. The contract shows upon its face that a possible failure to deliver all of the materials at the times specified was contemplated by both parties, and that a purchase by the defendants in open market of the deficiency, and deduction of the cost from the contract price, was contemplated and agreed upon both as the remedy and the measure of damages. *Haydnville, M. & M. Co.* v. *Art Institute*, 39 Fed. Rep. 484.

*J. L. Washburn*, for respondents.

The damages pleaded in this counterclaim were fairly within the contemplation of the parties as the probable consequence of the delay and breach of the contract. The demurrer admits that the damages were sustained, and the contract evinces no intention to waive them or contract away the right to maintain an action for them. The contract does no more than to emphasize the privilege of defendants to go into the market and buy, and insures them that privilege without the plaintiffs raising any contention as to that right. It does not exclude any other remedy which by virtue of the circumstances of the case was fairly and naturally the result of a breach of the contract. *Noyes* v. *Phillips*, 60 N. Y. 408; *Higgins* v. *Delaware, L. & W. R. Co.*, 60 N. Y. 553.

MITCHELL, J. According to the answer, the defendants had contracted to build an ore dock at Agate bay according to certain plans and specifications, and complete the same by May 1, 1892. The timber and lumber required for the work were of peculiar and unusual dimensions. In the prosecution of the work, it was necessary to employ a large crew of men, and in order that the work might progress without delay, and the men be kept employed, it was necessary that certain parts of the timber should be on hand at certain times; and, inasmuch as the dock had to be constructed in and over the water, it was necessary, to an advantageous performance of the work, that it be done while the ice remained on the water.

The plaintiffs, with knowledge of all these facts, on January 9,

1892, agreed to furnish to defendants all the lumber and timber for the construction of the dock, in three monthly installments. But they failed to furnish a large part of it, by reason whereof the defendants were put to large expense in going and endeavoring to procure the timber elsewhere, and were also damaged by reason of their workmen being compelled to remain idle, and also by reason of the work being delayed until the ice became rotten and unfit to work on, thereby rendering it necessary for defendant to use boats and flats, at greatly increased expense.

Plaintiffs do not dispute that under this state of facts the special damages pleaded would be recoverable, as being fairly within the contemplation of the parties as the probable consequence of a breach of the contract, unless the parties have expressly stipulated for some other measure of damages. As such a stipulation, they rely on the provision in the contract that "in the event of our [plaintiffs'] inability to furnish all or any part of said timber as proposed above, we agree to allow said Mathews & Krech to purchase the same in open market, and to charge the necessary expense to our account, the same as if we ourselves had purchased said timber." It is claimed that this language is restrictive, and limits the damages, in case of a breach of the contract, to the difference between the contract price and what defendants might have to pay for the timber in the market. We do not think that it can be held that the parties intended this provision to go to that length. We recognize the right of parties, if they see fit, to stipulate for a different measure of damages for the breach of a contract from that which the law would give. We also recognize the difference between contracts where the law furnishes a definite and fixed standard for measuring damages for their breach, and those of such a character that the damages which must result from a breach are uncertain in their nature, and not susceptible of proof by any fixed pecuniary standard; and we are aware that stipulations for a liquidation of damages should receive more favorable consideration in the latter class of cases than in the former. But, even in the latter, we think that, before a provision in the contract can be given the effect of a stipulation fixing a measure of damages either greater or less than the law would give, it must fairly appear from its language, construed in the light of the nature of the contract and the situation of the

parties, that they intended it to have that effect. No such result should be arrived at by mere doubtful inference. While, independently of any express provision to that effect, it would have been the right, as well as duty, of defendants, in case of plaintiffs' default, to procure the timber elsewhere, if obtainable in the market, yet, as laymen, the parties may not have understood this, and might well have inserted this provision in their contract from abundant caution, without having in mind, or at all intending, that it would or should operate as a stipulation for an exclusive measure of damages in case of a breach of the contract.

We do not think the case is one for the application of the maxim that the expression of one thing is the exclusion of another. That maxim is not of universal application, but depends upon the intention of the parties, as discoverable upon the face of the instrument or of the transaction. Order affirmed.

(Opinion published 56 N. W. Rep. 1112.)

