## HARRISON BROTHERS, Respondents, v. MURRAY IRON WORKS COMPANY, Appellant.

Kansas City Court of Appeals, November 3, 1902.

1. **Contracts:** CONSTRUCTION: COMMON RIGHT. Terms in a contract in derogation of common law—that is, establishing for the particular instance a rule contrary to what the law would provide— are, like provisions in a statute in derogation of common law, construed strictly.

2. ———: ———: EFFECT OF STIPULATION. A stipulation in a contract as to the defendant's right to enter plaintiff's premises and remove certain machinery upon the refunding of certain moneys paid by the plaintiff, is a special agreement and must be strictly construed.

3. ———: CONDITION: RELEASE. A payment by a debtor of a liquidated amount, presently due, and to which he has no defense, is not, by itself, a sufficient consideration to sustain a release by the creditor of other unliquidated claims against the debtor. (McCormick v. St. Louis, 166 Mo. 315, considered.)

4. ———: ———: ———: INTENTION. The fact, the defendant at the refunding of the money intended to secure a full release of all claims growing out of the transaction and this intention was well

known to the plaintiff, can make no difference, since the agreement was without consideration. (McCormick v. St. Louis, supra, distinguished.)

Appeal from the Nodaway Circuit Court.—*Hon. Gallatin Craig*, Judge.

AFFIRMED.

### STATEMENT BY BROADDUS, J.

The plaintiffs were at and prior to the sixteenth day of March, 1901, engaged as partners in the business of putting up and retailing natural ice in the town of Maryville, Missouri, and the defendant company located at Burlington, Iowa, was engaged in the business of constructing and putting in operation machinery for the manufacture of artificial ice. On said day, defendant agreed with plaintiffs to construct and put in operation an ice plant in said town of Maryville, to be completed and in operation by the first day of July next thereafter. This agreement was in writing, which provided that the machinery for manufacturing ice when properly operated would produce refrigeration equal to the melting of one ton of ice daily, continuous operation, and further agreed that with proper care, the ice freezing apparatus would produce five tons of clear, merchantable ice every twenty-four hours of continuous operation. It was a part of said contract, that when said machinery was completed, the defendant would furnish an engineer, who was to have charge thereof for ten days for the purpose of testing its fitness and capacity to meet the requirement of the said agreement, and if upon such test it fulfilled the requirement, it should be accepted by the plaintiffs, and if not, the plaintiffs might reject the same and so notify defendant in writing, and permit it to enter the premises of plaintiffs, on which the machines might be erected, and upon returning to them whatever money they had paid to defendant, remove the same. It was also provided that all foundations, masonry and carpenter work for com-

pressors, engine, pumps, tanks, and condensers, were
to be provided by the plaintiffs, and all holes for pipes
to pass through wall or floors were to be made by them,
and they were also to supply mains at such place in the
building as designated by defendant.

The plaintiffs were also to furnish the building, to
receive the machinery, to insure said machinery for the
use of defendant, and to furnish certain labor necessary
in the work. The contract has a clause for delivery
f. o. b. (free on board the cars) at Burlington, Iowa,
freight to be deducted from second payment to be made
upon the contract.

It appears that the putting in of the machinery was
completed on the fifteenth day of July, and that after
the engineer of defendant had been operating it for
more than ten days, it proved unsatisfactory to the
plaintiffs, whereupon they gave to the defendant the
required written notice, that they rejected it, upon
which notice, defendant paid to plaintiff $3,800, and
removed the machinery. The sum so paid represents
$3,581.86, money paid to defendant on the contract
price (which was $5,800) $216.14 paid by plaintiffs for
freight of the machinery from Burlington, Iowa, to
Maryville, Missouri, and $2 bank exchange. It being
a part of the plaintiffs' case, as shown by the petition:
"That in the winter prior to the ice season for the
year 1901, having in contemplation the erection of a
plant for the manufacture of artificial ice, they only
put up enough ice to answer for the use of their cus-
tomers until the first of July, of which it was alleged
the defendant was informed at the time of the making
of said contract; that their ice gave out in July and as
they had none to sell and deliver during the remainder
of the season, they lost the usual profits on such sales,
and lost their customers thereby, for all of which, they
ask compensation. Plaintiffs' evidence tended to show
the amount they had paid out in the performance of
their part of the contract, for labor furnished during
the progress of the work, for cost of foundation, provid-
ing mains, and other damages.

The defendant relied on accord and satisfaction. And it alleged that after constructing said machinery, it was ascertained that by reason of the extraordinary and unprecedented heat of the summer, the water furnished by the plaintiffs was fully twenty degrees hotter than was usual or ordinary, by reason of which said water required a greater degree of refrigeration than the melting of one ton of ice per day; that the defendant offered to and was willing to and could have so accommodated the machinery to the actual conditions, but by the wrongful acts of plaintiffs, they made the successful working of said machinery impossible; and that the plaintiffs when they received the said sum of $3,800 knew that defendant was denying its obligations to pay said sum; and that it was paying the same in good faith, as a full and complete adjustment of any right or claim that plaintiff had or might have growing out of said agreement, or in any manner connected therewith. There was evidence tending to show that the defendant's agent offered to adjust the machinery to existing condition, but that plaintiffs refused the offer and insisted on rejecting it altogether.

When the defendant paid to the plaintiffs said sum of $3,800, a receipt was executed by the plaintiff upon a proper construction of which, in connection with what was said by the parties at the time, and the surrounding circumstances, depends the determination of the question before us. This receipt with erasure and interlineations is as follows (words and figures in brackets having been erased):

"$3800.00
   [$3581.86.]
                    "Maryville, Mo., Aug. 12, 1901.
   "Received from the Murray Iron Works Company, of Burlington, Iowa [three thousand and five hundred, eighty-one, and eighty-six one-hundredths dollars]. Thirty-eight hundred dollars, amount paid by us to Murray Iron Works Company, and in full of all claims of any and every kind, under contract of March 16,

1901, for ice-making plant, sold to us under said contract, and we hereby surrender said contract, and permit the Murray Iron Works Company to enter premises and remove all their machinery as per contract.

"HARRISON BROTHERS,
"By BERT HARRISON."

When the defendant was preparing to remove the machinery, it presented to the plaintiffs above receipt as shown before erasures and interlineations at which time, it read for $3,581.86, which represents the actual amount paid by the plaintiff to the defendant on the contract. The plaintiffs signed the receipt, as it then stood, but refused to deliver it, until the money they had paid for freight, $216.14, and $2 for exchange, was paid them. Defendants' agent afterward paid to plaintiffs the sum of these two items, and the receipt was then changed so as to read as it now appears. The evidence disclosed the fact, that the freight bill of $216.14 was deducted at the time from a payment of $2,000, made by the plaintiffs, but the $2 for exchange was not.

There was some hesitancy upon the part of the defendant's agent in agreeing to pay plaintiffs the freight bill in addition to the amount actually received from plaintiff and he expressed a desire to hear from the defendant company before he would do so. Afterwards he stated that it was all right, and the defendant would pay it. The matter when it was finally concluded was in the hands of the respective attorneys of the parties. The plaintiffs' lawyer after stating on the witness stand that the defendant through its attorney had agreed to allow the whole claim for $3,800, then said to him that he would not pay any part of said amount until we signed (delivered) the receipt. The witness during the time, or previously, stated as, he testified, that it was "an outrage; you ask the plaintiffs to sign the receipt, as that much was due them and they ought to have it without signing the receipt." Then he was asked this question, "Q. You say, you had in mind a certain issue, what was that issue? A. I had in

mind as a lawyer this issue; they were exacting from us a receipt and a release for all claims for damages for paying to us just what was due us, and I had in mind, and did not intend as their counsel, taken up there for that purpose, to sign any receipt that would release them in law from a claim for damages and I was carefully weighing everything that was done at the very moment it was done. Q. You did know then, that the Murray Iron Works were paying this, as a complete accord and satisfaction, didn't you? A. That was a legal conclusion. I will concede that I thoroughly understood that their design and intention was, and they so expressed it, to get a receipt and release for all claims for damages before they would pay us any of this $3,800. That was their designated purpose and they so expressed it, and I understood it in that way. Q. They were paying that amount on that account? A. Yes, sir. Q. And this extra $218.14? A. You had better correct that $216.14—$2 of that was for exchange at the bank. Q. That was the disputed thing? A. Not at the second interview, it was not. Q. It was at the first? A. Yes, sir. He said he didn't know anything about it. He said he would have to see his company.''

There was a trial before a jury and plaintiffs obtained a verdict for the sum of $1,700, on which the court rendered judgment, from all which defendant appealed.

In this court, the parties have submitted the case upon the following written stipulation, viz.:

''The parties to this cause hereby mutually waive all questions raised on this appeal except the following two: First. Does the contract provision relating to the return of the advanced purchase money and removal of the machinery, limit respondent's remedies or rights, as against the appellant, to the return of the sum so advanced? If so, it is agreed that the cause may be reversed. Second. That the advanced purchase money is admitted to have been the liquidated

sum of $3,800, and that, under the facts proved, it was unconditionally due from appellant to respondents at the time the release was executed and was the consideration therefor. If the court decides the release was and is valid, it is agreed the case may be reversed. If the release is invalid, and respondents' claim for damages is not excluded by any provision of the contract, it is agreed the judgment may be affirmed; all other questions and all alleged defects or omissions in abstract or otherwise are hereby waived, the intention being to submit the cause on its merits as involved in the aforesaid questions.

*Alderman & Cummins* and *C. A. Anthony* for appellant.

(1) The proposal provides: "If rejected you shall . . . permit us to enter the premises and remove all our machinery without charge to you, and upon refunding to you whatever money has been paid us." This clause limits defendant's "liability to taking back the machine" upon restoring the money paid the defendant. Sycamore Co. v. Sturm, 13 Neb. 210; Skeen v. Engine & Thresher Co., 34 Mo. App. 500; Mansur v. Botts, 80 Mo. 651; Irwin's Adm'r v. Tanner, 1 Mo. 211; Kirk v. Seeley, 63 Mo. App. 262; Sheen's Case, 34 Mo. App. 500; Planing Mill Co. v. Brundage, 25 Mo. App. 271-2; Suits v. Taylor, 20 Mo. App. 173; Clark's Adm'r v. Kane, 37 Mo. App. 268; Bleyse v. Blackburn, 31 Mo. App. 264; Honk v. Bridwell, 28 Mo. App. 649. (2) There was also a dispute as to construction of contract in regard to freight, hence, matters unliquidated having been made, Harrisons could "not at the same time accept and reject a conditional tender." McCormick v. St. Louis, 166 Mo. 335; Pullman v. St. Louis, 145 Mo. 658-9; School Board v. Hull, 72 Mo. App. 408; Maark v. Schneider, 51 Mo. App. 100-2; Marshall v. Larkin's Sons, 82 Mo. App. 640. Besides this settlement was made by an agent under limited authority fully disclosed. Deutman v. Kilpatrick, 46 Mo. App.

629. There was a settlement of a disputed claim—an end of the matter. Livingston v. Dugan, 20 Mo. 103; Rinehart v. Bills, 82 Mo. 538; Draper v. Ousley, 15 Mo. 614; Jeffrey v. Detroit Railroad, 31, L. R. A. 111; Deutman v. Kilpatrick, 46 Mo. App. 629; McCormick v. St. Louis, 166 Mo. 335.   (3) "The prevention of litigation is not only a sufficient but a highly favored consideration." Pratt v. Castle, 91 Mich. 484; Marshall v. Larkin's Sons, 82 Mo. App. 640; Lancaster v. Elliott, 55 Mo. App. 254; Wirt v. Schuman, 67 Mo. App. 172. (4) The plaintiffs could not cut up their cause of action under the contract—they accepted the $3,800 on the condition that they sign receipt and release; they did so and are concluded by it.   Perkins v. Headley, 49 Mo. App. 1. c. 562; Och v. Railroad, 130 Mo. 46; McCormick v. St. Louis, 166 Mo. 335; Adams v. Helm, 55 Mo. 471; Jeffrey v. Railroad, 31 L. R. A. 171, 31 L. R. A. 173; Morgan v. Joy, 121 Mo. 681; Dalrymple v. Craig, 70 Mo. App. 155; Sedalia Brewing Co. v. Waterworks, 34 Mo. App. 56; Belch v. Miller, 32 Mo. App. 397; Deutman v. Kilpatrick, 46 Mo. App. 629; Och v. Railroad, 130 Mo. 48.

*W. C. Ellison* and *J. S. Shinabargar* for respondents.

(1) The machinery was removed by appellant, as provided for. The contract required respondents to furnish, and they did furnish, certain labor and material for the use of appellant, in the erection of the machine; and it was so used, and thereby wholly lost to respondents. No other qualifying circumstances intervening, they are entitled to recover for the loss. Chalice v. Witte, 81 Mo. App. 84; Shouse v. Neiswanger, 18 Mo. App. 236; Hammond v. Beeson, 112 Mo. 190; Tower v. Pauley, 67 Mo. App. 632.   (2) General rule for construing stipulations, limiting damages. Bishop on Contracts, secs. 410 and 411. Nothing must be left to implication or inference. 5 Am. and Eng. Ency. L. (2 Ed.), p. 338.   (3) In the present case, even if the

title to, and possession of the machine had passed to respondents, and they had returned it, not in renunciation of the contract, but in pursuance of its express terms, such act should not be construed as a voluntary rescission, so as to preclude the recovery of special damages. Kimball v. Vroman (24 Am. R. 558), 35 Mich. 335; 2 Benj. on Sales (1884), note 1, p. 792; note 1, p. 1146; 28 Am, and Eng. Ency. of Law (1 Ed.), note 1, p. 818; Optenberg v. Skelton (85 N. W. 356), 109 Wis. 241. (4) In case of a rescission of an executory contract of sale, the vendee may always recover in assumpsit, the purchase money advanced, and freight, express and storage charges, paid by him. Redmond v. Adams, 165 Mo. 60. Appellant proceeded to remove the machinery, and it thereupon became its duty to refund the money without exacting anything therefor; and a release of the claim for special damages executed by respondents to induce appellant to return said purchase money is void for want of consideration. Railway v. Clark, 92 Fed. Rep. 968, at p. 976; Miller v. Coates, 66 N. Y. 610; Foresch v. Blackwell, 14 Barb. 607; Keller v. Neal, 2 Watts. 424; Swaggard v. Hancock, 25 Mo. App. 597; 6 Am. and Eng. Ency. L. (2 Ed.), pp. 752 and 756; Lingenfelter v. Brewing Co., 103 Mo. 578; Tucker v. Bartle, 85 Mo. 114. (5) Payment of a liquidated sum, presently due, is not a consideration for the release of another unliquidated sum, though arising out of the same transaction. Foresch v. Blackwell 14 Barb. 607; Railway v. Clark, 92 Fed. Rep. 968.

BROADDUS, J.—Under the stipulation of the parties, the first question for us to determine is, was the defendant's liability limited in the event of a failure to fully perform its contract to a return of the amount of money received from the plaintiffs? If so, the plaintiffs were not entitled to recover. The clause in the contract in reference to this matter is as follows: "After the plant is erected, we (defendant) to furnish an engineer to have charge of the operation of the

machine for ten days, during the time, he will do the work herein specified. At the end of the above mentioned ten days, you (plaintiffs) shall accept or reject the plant. It being understood, however, that if it fulfills the requirements of this proposition, it shall be accepted. If rejected, you shall notify us in writing thereof, and hereby permit us to enter the premises and remove all our machinery without charge to you, and upon refunding to you whatever money has been paid us.'' It must be conceded that the plaintiffs' claims for damages are such as would be allowed at law, and we do not understand that defendant denies such to be the case. Damages of this character following as a matter of right at law, may be restricted or altogether excluded by contract, but such contracts being in derogation of law are to be strictly construed. Bishop on Contracts, section 404, lays down the rule in the following language: ''Terms in a contract in derogation of law—that is, establishing for the particular instance a rule contrary to what the law would provide—are, like provisions in a statute in derogation of the common law, construed strictly. For instance, it is so, when a common carrier undertakes to limit his liability by a special agreement with the party, he can claim nothing beyond what is plainly within the words.'' In Richardson v. Railway, 149 Mo. 311, the court adopted the said rule from Bishop. This rule is applied by other courts. Wellston v. Matthews, 55 Minn. 422; Newton v. Pyne, 40 Iowa 166; 5 Am. and Eng. Ency. of Law (2 Ed.), page 333. In Fisher v. Barret, 4 Cushing 381, the court adopts the rule as laid down by Comyn on Contracts, that stipulated damages can only be where there is a clear and unequivocal agreement, which stipulates for the payment of a certain sum as liquidated satisfaction fixed and agreed upon by the parties, for the doing or not doing of certain acts particularly expressed in the agreement.''

It is obvious that the stipulation in the case had reference to only one matter, and that was the right of defendant to enter plaintiff's premises, and remove the

machinery, upon payment to them of the money it had received from them in payment on the contract. It is a special agreement and under the rule must be strictly construed. It does not purpose to include any other claim plaintiffs may have growing out of the transaction. The conclusion is unavoidable, that the stipulation in question was not a limitation upon the plaintiffs to a return of the money so paid.

It being agreed, "that the advanced purchase money is admitted to have been in the liquidated sum of $3,800, and that, under the facts proved, it was unconditionally due from appellant's at the time the release was executed," the question submitted is, "was said release valid," and we suppose that when the parties used the word valid they did so with the understanding that the court was to determine whether it was efficacious, for the purposes claimed by the defendant.

The respondents contend, that said release is void for want of consideration. That is to say, that the money in question paid to them was liquidated and due and there being no other or further consideration, the release could have no effect in extinguishing plaintiffs' claims for unliquidated damages. In Railway v. Clark, 92 Fed. Rep. 968, the court held: "Payment by a debtor of a liquidated amount, presently due, and to which he has no defense, that can be urged in good faith, or with color of right, is not, by itself, a sufficient consideration to sustain a release by the creditor of other unliquidated claims against the debtor." The facts in that case were that the defendant "was indebted to plaintiff in amounts which were due and liquidated and undisputed, rendered him a statement of account, in which he was credited with such amounts only, and was charged with certain cross-demands, which were unliquidated and open to dispute. It tendered payment of the balance shown by the statement to be due, on the execution by him of a receipt in full, which accompanied the statement. "It was held, that the execution of the receipt, and the making and acceptance of the payment, did not constitute an accord and satis-

faction: there being no consideration for the receipt.'' The court cites many adjudications supporting its opinion. In Swaggard v. Hancock, 25 Mo. App. 596, it is held that "the payment of a debt clearly due, does not constitute a sufficient consideration to support any kind of a contract or agreement.''

The question was before the Supreme Court in McCormick v. City of St. Louis, 166 Mo. 315. The court among other things discussed the principles we are considering as follows: "Appellants final suggestion, that as defendant only paid what it acknowledged and conceded to be due, the agreement on his part, evidenced by his receipts in full satisfaction and discharge of all demands, was without consideration, and only operated as a discharge of so much of his claim as was actually paid, and not that part involved in the present suit, is erroneous in this, that he overlooks the fact that the amount due under the several contracts with the defendant city was at all times in dispute, at least so far as the plaintiff was concerned. Though the city only paid at last what it at all times acknowledged to be due, and had expressed its readiness to pay under the terms of the contract, it was not bound to pay that until the plaintiff would agree to accept it in full satisfaction of all demands, and this constitutes in law a sufficient consideration to support a settlement made.'' The court in its opinion seems to recognize the principle announced and upheld in the foregoing authorities, but the difficulty arose as to its proper application to the facts of the case.

Notwithstanding there was some disagreement between the parties at and prior to the time of the signing and delivery of the release as shown by the erasures and interlineations on its face, and by other evidence, as to what items should be allowed in making up the sum total, that plaintiffs had paid on the contract, the defendant by its stipulations for the submission of the case waived all controversy as to that matter, and the case now stands as if there had been no such disagreement, and said sum of $3,800 is to be considered as

liquidated, due and undisputed. At the time and prior to the payment of said sum and the signing and delivery of said release, plaintiffs had made no claim upon the defendant for any part of the unliquidated damages now in controversy. It is true that plaintiffs' attorney during the time complained to defendant's agent to the effect, that it was an outrage upon plaintiffs to require them to sign the release as the amount therein named was due them; and that he well knew that is was the expressed design of defendants to get a release for all claims for damages before he would pay the money. But because such were the circumstances under which the release was executed, can make no difference in the principle applicable to the case, for in the end the result was the same, the writing stood without any consideration. It was *nudum pactum*.

Because defendant required a release for all claim for damages before it would pay what was admittedly due, does not bring the case within the rule in Mc-Cormick v. City of St. Louis, supra, where the claims were held to have been at all times in dispute. In this case, they had not been asserted and were not in dispute at any time prior to the execution of the release. Applying the principle of the foregoing case, it is clear that the release is invalid. The cause is affirmed. All concur.