HENRY C. ASEL v. THE ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA, Appellant.—No. 39923.—197 S. W. (2d) 639.

Court en Banc, November 11, 1946.

*Sam Bushman, Jr., H. P. Lauf* and *Carson E. Cowherd* for appellant; *Keyes & Bushman,* and *Gage, Hillix, Shrader, Cowherd & Phelps* of counsel.

*Ragland, Otto, Potter & Embry* and *Leon P. Embry* for respondent.

660

ELLISON, J.—This case was certified to this Court by the Kansas City Court of Appeals under Sec. 10, Art. V, Const. Mo. 1945, and our Rule 2.06, on the grounds that its opinion, reported in 193

S. W. (2d) 74, conflicts with three decisions[1] of the St. Louis Court of Appeals, and that those decisions are out of harmony with several decisions of this Court, mainly the first three cited below.[2] The point of conflict on which the cause was certified, was whether the suit was contractually barred by limitation under a clause in the insurance contract in litigation. But under the above Rule our review is not limited to that question. We must determine the whole case as if the appeal had been originally brought here.

The respondent, a resident of Missouri, sued the appellant fraternal beneficiary association, an Ohio corporation (hereinafter called the Order), on his benefit certificate therein issued in November, 1936, insuring him against accidental injury. He prevailed in the trial court and the Court of Appeals. The certificate provided [as did our statute then and since][3] that it, together with the constitution, by-laws and articles of incorporation of the Order and any changes, additions or amendments thereto, should constitute the insurance contract; and a provision of its Constitution required any suit on the certificate to be brought within *six months* after the insured's claim had been disallowed by the Order. He did not bring it until thirteen months thereafter.

Appellant's answer pleaded that fact in bar, contending: that the benefit certificate was an Ohio contract and governed by the laws of that State; that such six months contractual limitations of action had been held reasonable and valid in Ohio;[4] that the action was therefore barred in this state notwithstanding our statute of limitations, Sec. 6147,[5] which permits such actions to be commenced within five years after the cause of action accrued. Appellant maintained the six months contractual limitation was enforceable in this action in Missouri on two theories: first, because Sec. 1021 of our statutes provides that "Whenever a cause of action has. been fully barred by the laws of the state . . . in which it originated, said bar shall be a complete defense to any action thereon, brought in any of the courts of this

[1]Tuthill v. Fid. & Dep. Co. of Md., 119 S. W. (2d) 468; Roberts v. Modern Woodmen of America, 133 Mo. App. 207, 113 S. W. 726; Dolan v. Royal Neighbors, 123 Mo. App. 147, 100 S. W. 498.

[2]Karnes v. American Ins. Co., 144 Mo. 413, 416, 46 S. W. 166; Cobble v. Royal Neighbors. 291 Mo. 125, 137, 138, 236 S. W. 306, 21 A. L. R. 1346; DePass v. Harris Wool Co., 346 Mo. 1038, 1042(2), 144 S. W. (2d) 146, 148(3); Brucker v. Georgia Cas. Co., 326 Mo. 856, 866(II), 32 S. W. (2d) 1088, 1091(3); Richardson v. C. & A. Rd. Co., 149 Mo. 311, 322 (II), 50 S. W. 782, 785(2).

[3]Sec. 5997, R. S. 1929, Sec. 6112, R.'S. 1939 and Mo. R. S. A. All references to our statutes hereafter are to R. S. Mo. 1939 and same section numbers in Mo. R. S. A. unless otherwise shown. Italics in quotations are ours unless otherwise noted.

[4]Citing: Appel v. Cooper Ins. Co., 76 Oh. St. 52, 53-4, 57-8, 80 N. E. 954, 957, 10 L. R. A. (N. S.) 674, 10 Ann. Cas. 821; Bartley v. Nat'l Business Men's Ass'n, 109 Oh. St. 585, 588, 143 N. E 386, 387.

[5]First enacted by Laws Mo., 1939, pp. 430, 448, as Sec. 6029b.

state;" and second, because the contract limitation in the benefit certificate was not a mere procedural limitation as to which the lex fori is controlling; but was an integral and substantive part of the insurance contract and governed by the lex loci contractus[6] (Ohio) independent of our Sec. 1021.

Respondent contended and still contends: that the benefit certificate was a Missouri contract; that regardless of whether the six months contractual limitation therein had been upheld by the Ohio courts, it did not come within the purview and protection of our Sec. 1021; that it was in conflict with our limitation statute, Sec. 6147; and that it was outlawed by Sec. 3351 of our statutes enacted in 1887 long before the insurance contract was made, which provides that "All parts of any contract or agreement hereafter made or entered into which either directly or indirectly limit or tend to limit the time in which any suit or action may be instituted, shall be null and void."

To that appellant answered that Sec. 3351 applies only to limitation of action contracts made in Missouri, and not to those made in other states. On that point appellant invoked the three decisions of the St. Louis Court of Appeals cited at the beginning of this opinion in marginal note 1. Respondent replied that the statute declares the *public policy* of the state and is controlling regardless of whether the limitation contract be procedural or substantive, or made here or elsewhere. He relied principally on the first three decisions of this court cited above in marginal note 2, and some decisions of the United States Courts to which we have added a few others.[7]

As against that, appellant's final point was and is that even if respondent's public policy theory be correct, our courts will not, or should not, nullify a contract validly made in a foreign state, though contrary to our public policy, unless enforcement thereof would be inherently vicious and contrary to good morals or natural justice— which appellant says is not true of the contractual six months limitation clause in the instant benefit certificate. General authorities are cited along with Missouri cases[8] upholding foreign insurance contracts

[6]37 C. J., p. 729, sec. 46; p. 732, sec. 50; 12 C. J., p. 485, sec. 92; 15 C. J. S., pp. 948-953. sec. 22a, b, e; 34 Am. Jur., p. 51, sec. 51; 11 Am. Jur., p. 505, sec. 191, p. 508, sec. 193.

[7]Meinsen v. Order of U. C. T., 43 Fed. Supp. 756; Order of U. C. T. v. Meinsen, 131 Fed. (2d) 176, 179(7) et seq.; Jamison Coal & Coke Co. v. Goltra, 143 Fed. (2d) 889, 895 (23); Griffin v. McCoach, 313 U. S. 498, 503, 85 L. Ed. 1481, 61 S. Ct. 1023, 134 A. L. R. 1426; Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U. S. 487, 496, 85 L. Ed. 1477, 61 S. Ct. 1020; Pink v. A. A. A. Highway Express, 314 U. S. 201, 209-10, 86 L. Ed. 152, 158, 62 S. Ct. 241, 246; Hoopeston Canning Co. v. Cullen, 318 U. S. 313, 316-319(2), 87 L. Ed. 777, 63 S. Ct. 602, 145 A. L. R. 1113; Home Ins. Co. v. Dick, 281 U. S. 397, 408(5), 74 L. Ed. 926, 50 S. Ct. 338, 74 A. L. R. 701.

[8]13 C. J., p. 255, sec. 27; 17 C. J. S., p. 348, sec. 16e; 11 Am. Jur., p, 411, sec. 125; 12 Am. Jur., p. 667, sec. 170; Restatement, Conflict of Laws, p.

which would have been denounced as void if made here, because permitting forfeiture of the insurance or the defense of suicide contrary to our statutes: so also of usurious and unilateral gambling contracts.

The Kansas City Court of Appeals ruled in favor of the respondent on the public policy issue. We go back now to the several issues reviewed above, in their order. With reference to the dispute between the parties as to whether the law of Missouri or Ohio governed the insurance contract. Both based their contentions on the doctrine that the locus contractus is the place of performance of the last act necessary to complete the contract. Appellant maintained that place was Ohio because after respondent made his written application for the insurance to the Local Council in Missouri it was forwarded to appellant's Grand Council in Ohio where it was accepted and the benefit certificate was dated, issued and mailed to respondent in Missouri. The certificate recited that he was accepted as an insured member of the Order "beginning at twelve (12) o'clock noon, Eastern Standard time, on the day this certificate is dated," which accorded with the provisions of the Constitution.

Respondent contended to the contrary that the contract was completed in Missouri because his application for the insurance contained this recital: "I hereby agree, To accept the Certificates of Membership and Insurance issued upon this application, subject to"—then followed various stipulations. He contends this part of the application spoke prospectively and meant he *would* accept the insurance on those terms, thereby making his acceptance the last act necessary to complete the contract. We are unable to agree with respondent and must overrule his contention on that point. Under the authorities cited below[9] his application was his offer to take the insurance on the stipulated terms, and appellant's issuance of the benefit certificate in Ohio, effective forthwith, was an acceptance of the offer and completed the contract in that State on the date specified therein.

Respondent also argues the fact that the contract was to be carried out in this State made our law controlling. But without further discussion we need only say that since (and even before) the

---

732, sec. 612c; (Non-Forfeiture, Sec. 5852); Liebing v. Mut. Life Ins. Co., 276 Mo. 118, 131(2), 207 S. W. 230, 231(II); (Suicide, Sec. 5851); Lukens v. Internat. Life Ins. Co., 269 Mo. 574, 585(II), 191 S. W. 418, 421(II); (Usury, Sec. 3231); Trower Bros. v. Hamilton, 179 Mo. 204, 228, 77 S. W. 1081, 1088; Gambling, Sec. 4714-5); Edwards Brokerage Co. v. Stevenson, 160 Mo. 516, 527-8, 61 S. W. 617, 620.

[9]Rowland v. Mo. State Life Ins. Co. (St. L. Ct. App.), 48 S. W. (2d) 31, 33-4(1, 2); Yeats .v. Dodson, 345 Mo. 196, 206(2), 127 S. W. (2d) 652, 656(3), 138 S. W. (2d) 120; Eyring v. K. C. Life Ins. Co., 234 Mo. App. 328, 333 (4, 5), 129 S. W. (2d) 1086, 1089; Fields v. Equitable Life Assur. Soc. (Mo. App.), 118 S. W. (2d) 521, 523(8); Pickett v. Equitable Life Assur. Soc. (Mo. App.), 27 S. W. (2d) 452, 454 (3-4).

664

decision in 1938 of the Bolin case[10] by the United States Supreme Court on certiorari from this state, the law here and elsewhere has been contrary to respondent's view. It held the certificate of a fraternal beneficiary association is not a mere contract to be construed and enforced according to the laws of the state where it was delivered. On the contrary it attests "a complicated and abiding relation" between the member and the association; the rights of membership being governed by the law of the State of incorporation, and the decisions thereon of the highest courts of that State being entitled to full faith and credit in this State, under Sec. 1, Art. IV of the Federal Constitution. So, for both the reasons stated above we think the Court of Appeals ruled correctly that the benefit certificate was an Ohio contract.

 But we do not agree with appellant that our Sec. 1021 imports and makes effective in this state the contractual six months limitation of action clause appearing in the benefit certificate. That statute does, it is true, provide that if a cause of action is "barred by the *laws*" of the foreign state where it originated, then that bar shall be a complete defense in Missouri. But the word "laws" as used in the section refers to the *statute* law of the foreign state, and not to some *contract* limitation which the courts of that state may have upheld. And there is no proof that there is any six months statutory limitation on such actions in Ohio. As stated in 37 C. J., p. 686, sec. 6: "By the common law there was no fixed time for the bringing of actions. Limitations are created by statute and derive their authority therefrom; they are legislative and not judicial acts." See also 34 Am. Jur., p. 14, sec. 6. And the word "law", or the phrase "by law", when used in contextual connections similar to that appearing here, have usually been held to refer to constitutional or statutory law, especially when there is no common law on the point. In general on this question see the authorities cited below.[11]

 So the case must be ruled independently of Sec. 1021. And as shown by the encyclopedic texts cited above in marginal note 6, if the contractual limitation clause in the instant benefit certificate is purely procedural, then it is not controlling in this suit in Missouri. But if, on the other hand, the clause is an integral and substantive part of the insurance contract under the law of Ohio, then it is binding in Missouri—unless as a matter of public policy our statute, Sec. 3351, out-

---

[10]Sov. Camp, Woodmen of the World v. Bolin, 305 U. S. 66, 75, 83 L. Ed. 45, 59 S. Ct. 35, 119 A. L. R. 478 (with Annotation); 344 Mo. 714, 127 S. W. (2d) 718.

[11]5 Words & Phrases (Perm. Ed.) p. 1084; 24 ibid., p. 334; 33 ibid., p. 413; Hauenstein v. Lynham, 100 U. S. 483, 488(2), 25 L. Ed. 628, 630(3); Missouri v. Illinois, 200 U. S. 496, 520(6), 50 L. Ed. 572, 26 S. Ct. 268; State ex rel. McKittrick v. Mo. Pub. Serv. Com., 352 Mo. 29, 35-6(2), 175 S. W. (2d) 857, 861(2).

laws the clause and makes applicable our statute of limitations, Sec. 6147. On the point that the clause is substantive and binding in this state, appellant relies on the three decisions of the St. Louis Court of Appeals cited at the beginning of this opinion in marginal note 1; and they do sustain appellant.

All three of these decisions were based on Illinois contracts sued on in this state. The first and leading one was the Dolan case decided in 1906. The Roberts case was decided in 1908, and the Tuthill case in 1938. The first two involved fraternal benefit certificates with a contractual time limitation clause of one year. The Tuthill case was on an indemnity bond and the time limitation was fifteen months. All three of the cases expressly took cognizance of (now) Sec. 3351, and ruled it did not override the foreign law. But none of them considered, or at least mentioned, the question of public policy as inhering in that statute, although one of the briefs in the Dolan case cited one of our decisions, the Karnes case, which is discussed in the next three paragraphs.

The Karnes case is the leading one of the five decisions of this court cited above in marginal note 2. We shall review only the first three, which were mainly relied on by respondent and the Kansas City Court of Appeals to establish the public policy theory under Sec. 3351. All of these were delivered by this court en banc. Appellant insists none of the cited cases are in point because they were not based on contracts made in another State (as here) but were founded on Missouri contracts and hence clearly governed by Missouri law. After consideration (and examination of the original record on file here in the Karnes case) we think appellant is right in that factual contention, except as to the DePass case, as will be explained later. But we do not agree that they are irrelevant: for we think they announce a broad rule of public policy applicable to contracts and agreements, whether they be procedural or substantive, foreign or domestic.

The suit in the Karnes case, which was decided in 1898, was on a fire insurance policy containing a contractual limitation of action clause of one year after the fire, but the suit was not brought until more than two years thereafter. The decision held our general ten year statute of limitations (now Sec. 1013) applied, and that Sec. 3351 nullified the one year limitation clause therein. With reference to this then newly enacted statute the opinion declared:

"The legislature determined that a sound public policy demands that the courts of the State shall remain open to litigants as long as their claims are not barred by the statute of limitations, and hence passed this act. The statute proceeds upon the theory that rules limiting the time for bringing suits should be uniform and general, and should not be left to private contract. . . . The legislature,

to prevent the unfair and unreasonable operation of such contracts, established as the policy of this State a uniform rule as to the time within which suits of the same class may be brought, and declared that this should not be changed by agreement. This amounted in effect to a declaration that the statute of limitations fixes a reasonable time for such purpose, and hence special contracts for a different limitation should be prohibited.''

The Cobble case, decided in 1921, was a suit on a fraternal benefit certificate. The insured had disappeared from his home for seven years, and his beneficiary sued on the certificate relying on the statutory and common law presumptions of his death. The insurance contract included a by-law providing there could be no recovery on the certificate without proof of actual death or until the lapse of the insured's life expectancy, no matter how long he may have been absent and any statutes to the contrary notwithstanding. This court en banc held Sec. 3351 was broad enough to, and did, invalidate the by-law, although it was not a limitation of action provision but the reverse: it *postponed* the right to sue—which was more nearly a substantive provision. The Roberts case supra (marginal note 1) was cited in the opinion along with the Karnes case, but no effort was made to distinguish them.

The DePass case, rendered in 1940, was a suit by a layman rate expert for a contingent fee for services rendered in rate reduction cases before the Interstate Commerce Commission. The employment contract was made in Illinois, and apparently the services were to be rendered by the plaintiff in Illinois and the District of Columbia. The defendant resided in Missouri. The defense was that the contract was void because it required the rendition of services which would constitute the practice of law under our statute, Sec. 13313, whereas Sec. 13314 forbid such services to be performed except by a duly licensed attorney at law. It was urged these statutes established the public policy of the State and that we were not obliged to enforce a contract against it. The Interstate Commerce Commission regulations did not confine the practice before it to lawyers. This court ruled the Federal law was controlling but said: ''It may be conceded that, except as otherwise provided by the United States Constitution, the laws of a state have no force beyond its boundary and that this court is under no compulsion to enforce, against the public policy of Missouri, a contract made in another state although valid where made and valid at the place of performance.''

As will be seen, this DePass case was based on a foreign contract to be performed outside the state and involving questions ▮▮▮ bearing on the substantive validity of the contract; and yet it was conceded our public policy would prevail but for the superior

authority of the Federal government in its own field. The view expressed in the DePass and Karnes cases is confirmed by several Federal decisions cited above in marginal note 7, and next referred to. Of these the Meinsen case, decided by the U. S. District Court (W. D. Mo.) in 1942, involved a benefit certificate of the instant appellant Order. It held our public policy expressed in Sec. 3351 nullified the six months limitation of action clause in the certificate, under the ruling in our Karnes case; and that decision was affirmed by the U. S. Circuit Court of Appeals. Likewise, the latter court in the Jamison case, decided in 1944, held the Missouri rule is that foreign contracts contrary to the public policy of this state will not be enforced.

The public policy rule announced in these cases is not by any means restricted to procedural matters or even to foreign doctrines that are deemed vicious or immoral. The protection of our citizens is one of its objectives. The Hoopeston case (marginal note 7), decided by the United States Supreme Court in 1942, declares: ''In determining the power of a state to apply its own regulatory laws to insurance business activities, the question in earlier cases became involved by conceptualistic discussion of theories of the place of contracting or of performance. More recently it has been recognized that a state may have substantial interests in the business of insurance of its people or property regardless of these isolated factors. This interest may be measured by highly realistic considerations such as the protection of the citizen insured or the protection of the state from the incidents of loss. . . . To insure the protection of state interests it is now recognized that a state may not be required to enforce in its own courts the terms of an insurance policy normally subject to the law of another state where such enforcement will conflict with the public policy of the state of the forum.''

But none of these decisions passed on the question whether the Bolin case (marginal note 10) states an exception to the public policy rule, as applied to mutual or fraternal beneficiary associations. There is some reason for thinking it did, since it held without exception that the law of the domicile of the association, rather than the law of the forum, governs the right of the parties, and assigned special reasons for so holding, namely: the complicated and abiding relation between the association and its members, their indivisible unity and the confusion that would result if their rights were not controlled by a single law—following the Mixer and Green cases.[12]

In the absence of any direct ruling on the question, we search for

---

[12]Modern Woodmen v. Mixer, 267 U. S. 544, 551, 69 L. Ed. 783, 45 S. Ct. 381, 41 A. L. R. 1384; Royal Arcanum v. Green, 237 U. S. 531, 542, 59 L. Ed. 1089, 35 S. Ct. 724, L. R. A. 1916A, 771.

inferences that may be drawn from the Federal decisions cited in marginal note 7. As has been shown both Meinsen decisions *did* apply the public policy rule to this appellant, a fraternal beneficiary association, on the very issue involved here. And the first Meinsen case cited but did not discuss the Bolin case. In the Dick case, which antedated the Bolin case by eight years, the United States Supreme Court recognized the public policy rule, but refused to apply it even against a foreign stock fire insurance company (as appears), because the insurance contract was made and to be performed and the underlying defendants and insured property belonged, all outside the forum state. The inference to be drawn is that the application of the public policy rule depends on whether there is some local interest in the forum state to be protected.

The Griffin and Klaxon cases were decided concurrently in 1941. The United States Supreme Court there held the Erie-Tompkins case,[13] which preceded the Bolin case about six months, *requires* the Federal courts in conflict of law cases to follow the laws and decisions of the forum state declaring its public policy—where nothing in the Federal Constitution forbids. The same year in the Pink case the same court applied the public policy rule to a mutual insurance company, but reserved the right to determine in each case how far the full faith and credit clause of the Federal Constitution dictates a contrary course. Likewise in the Hoopeston case, supra, that court expressly and liberally applied the public policy rule to *reciprocal* insurance associations. And it would seem that in mutual companies and reciprocal associations[14] there would be a complicated relation and interdependence similar to that existing in fraternal beneficiary associations. On authority of these decisions we hold the Bolin case does not forbid the application of the public policy rule to the contractual six months limitation clause in respondent's benefit certificate.

 There is another point to be considered, which was raised but not stressed in respondent's briefs in the Kansas City Court of Appeals and here. It was ignored in appellant's brief and was not discussed in the opinion of the Court of Appeals. That point raises the question whether the contractual six months limitation of action clause in appellant's benefit certificate was modified or superseded by another provision added to the Constitution later. In the discussion of that point we must first refer to certain intervening legislation in this State bearing thereon.

When the instant benefit certificate was issued in 1936, there was

---

[13]Erie R. C. v. Tompkins, 304 U S. 64, 82 L. Ed. 1188, 58 S. Ct. 817, 114 A. L. R. 1487.

[14]As to reciprocal associations see: Sec's 6078-6089; Annotations, 94 A. L. R. 836; 141 A. L. R. 765; 145 A. L. R. 1121.

no statute of limitations in this state specially applicable to fraternal benefit associations. The ten year general statute of limitations, now Sec. 1013, applied to them. At that time our statutes governing both foreign and domestic fraternal beneficiary associations operating in this state, required them to conform to our laws; to be licensed annually; and provided for revocation of their licenses if they failed to comply with our laws: Sec's 6002, 6004, 6005, 6020, R. S. 1929. Under these statutes it was held in State ex rel. Security Benefit Ass'n v. Shain, 342 Mo. 199, 203 (2, 3), 114 S. W. (2d) 965, 967(3), decided in 1938 that "a fraternal benefit association, regardless of when admitted to transact business in this State, must at all times continue to comply with the provisions of our fraternal insurance code in order to retain its license and to be entitled to the benefit and exemptions thereof." That case was decided in 1938.

The next year, by Laws Mo. 1939, pp. 430, 439-440, 446, 448, the above statutes were reenacted, retaining the above provisions and adding others, among them the present five year statute of limitations, Sec. 6147, specially applicable to fraternal beneficiary associations. And further, a subsection (3) was inserted in Sec. 6112 (the former Sec. 6005) forbidding the issuance and delivery in this state of any benefit certificate containing a time limitation of actions provision of less than five years. Another subsection (4) required a submission of certificate forms to the Superintendent of Insurance and his approval thereof if "not inconsistent with any other provision of law applicable thereto."

Two years after that the appellant revised its Constitution, effective September 1, 1941, which was two years before this suit was filed. Among other changes a new Section 25 was inserted immediately following Sec. 24, Art. XV, which latter contained the six months limitation clause. The new section provided: "If any time limitation in this Constitution . . . within which an action at law or in equity must be commenced is less than that permitted by the laws applicable to fraternal beneficiary societies in the State or Province whose laws govern the contract, such limitation is hereby extended to agree with the minimum period permitted by such laws."

This new section necessarily acknowledged that although the six months limitation in Sec. 24 was contractual, yet it was a mere limitation and subordinate to statutory limitations. The only question is, what State was referred to by the words "State or Province whose laws govern the contract"? Obviously this provision was not phrased with the Bolin case in mind, because under that decision there was only one State whose laws governed the contract ▮▮▮ substantively, and that was the domiciliary state of the association, in this instance Ohio. Yet the clause used the words "State or Province", implying there

670

might be different States or Provinces. Evidently this meant the State or Province whose laws govern the procedural enforcement of the contract. So we conclude the new Section 25 of the appellant's Constitution in this instance referred to Missouri, and acknowledged our five year limitation statute Sec. 6147 applied. Its minimum and only time limitation was five years.

So we agree with the conclusion reached by the Kansas City Court of Appeals on the issues hereinbefore discussed. We also so agree with its opinion on the other points decided therein, and shall not extend this opinion to rule on them specifically. For the reasons stated, the judgment of the circuit court is affirmed. All concur.