133 So.2d 735 (1961)
SUN INSURANCE OFFICE, LIMITED, Appellant,
v.
John CLAY, Appellee.
No. 31079.
Supreme Court of Florida.
October 18, 1961.
*736 Keen, O'Kelley & Spitz, J. Velma Keen, Charles H. Spitz, Tallahassee and Rein, Mound & Cotton, New York City, for appellant.
Paschal C. Reese and Gibson, Gibson & Reese, West Palm Beach, for appellee.
Richard W. Ervin, Atty. Gen., Robert J. Kelly and James Mahorner, Asst. Attys. Gen., as amicus curiae.
Fred M. Burns, Tallahassee, as amicus curiae.
ROBERTS, Chief Justice.
We here consider two questions of state law certified by the United States Court of *737 Appeals for the Fifth Circuit to this court for decision as authorized by § 25.031, Fla. Stat., F.S.A., and Florida Appellate Rule 4.61, 31 F.S.A. The Court of Appeals acted in response to the opinion and mandate of the United States Supreme Court in Clay v. Sun Insurance Office, Limited, 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170, which vacated the judgment of the Court of Appeals in the cause, Sun Insurance Office Limited v. Clay, 5 Cir., 265 F.2d 522, and remanded the cause to such court.
The facts and circumstances culminating in the instant litigation, and its history, are stated in detail in the opinions of the federal appellate courts referred to above. The salient facts necessary to our determination of the legal questions presented to this court for decision are, however, stated in the questions as certified to this court by the Court of Appeals. The first question certified reads as follows:
"(1) Are the provisions of Section 95.03 and 95.11 (3) Florida Statutes, making void any provisions of an insurance contract requiring suit on the contract to be filed in a period shorter than five years applicable to a personal property, world-wide, all-risks, floater insurance policy under the following circumstances: the policy was applied for in Illinois from a British company, qualified to do business in Illinois and in Florida and nine other states, by the assured, who was then a resident of Illinois; the premium was paid in Illinois and the policy was issued there in 1952; subsequently, the assured moved his legal residence to Florida and the losses occurred there in 1954-55; suit was filed in Florida more than twelve months after discovery of the loss; the policy provided that any suit under the contract must be filed within twelve months from the discovery of the loss; the twelve-month limitation clause of the contract is valid and enforceable in the State of Illinois?"
Section 95.03, supra, was enacted in 1913 as §§ 1 and 2 of Ch. 6465, Acts of 1913, and provides as follows:
"All provisions and stipulations contained in any contract whatever * * fixing the period of time in which suits may be instituted under any such contract * * * at a period of time less than that provided by the statute of limitations of this state, are hereby declared * * * to be illegal and void. No court in this state shall give effect to any provision or stipulation of the character mentioned in this section." (Emphasis added.)
And § 95.11(3), supra, specified a five-year limitation period for actions on written contracts not under seal, the type of contract with which we are here concerned.
The Fifth Circuit Court of Appeals in its opinion and judgment, supra, 265 F.2d 522, did not decide the question of whether § 95.03 was, in fact, intended to apply to a contract of insurance issued in another state to a resident of such state, since it was of the opinion that, even if applicable, a violation of the due process clause of the federal constitution would result from invalidating the 12-month "suit clause" in the subject insurance contract. On certiorari to review such judgment a majority of the United States Supreme Court, speaking through Mr. Justice Frankfurter, held that, under settled canons of constitutional adjudication, "the constitutional issue should have been reached only if, after decision of two non-constitutional questions, decision was compelled." [363 U.S. 207, 80 S.Ct. 1224.] Accordingly, the judgment of the Court of Appeals was vacated and the cause remanded in order to secure from this court a decision on the two unresolved questions of state law now before us. Clay v. Sun Insurance Office Limited, supra.
In a dissenting opinion Mr. Justice Black, joined by the Chief Justice and Mr. Justice Douglas, argued strongly that all questions of law in the case  constitutional and nonconstitutional *738  could properly and should be decided without further delay by the High Court; and he proceeded to do so, advancing cogent reasons in support of the applicability of § 95.03 to the subject contract and its constitutionality when so applied.
We are not here concerned, of course, with the constitutionality vel non of § 95.03 as applied to so-called foreign contracts, including the subject contract, since this question is not before us. In view, however, of the ruling of the Court of Appeals respecting the validity of the statute as applied to the subject contract, we have considered the question of the applicability of the statute to the subject contract in the light of the well settled rule of statutory construction that a statute must be construed, if fairly possible, so as to avoid "not only the conclusion that it is unconstitutional, but also grave doubts upon that score," Burr v. Florida East Coast R.R. Co., 1919, 77 Fla. 259, 81 So. 464. Assuming arguendo that we are as sanguine as appellant insurance company that "grave doubts" should be held to exist as to the validity of § 95.03 as applied to the subject contract, we must conclude, nevertheless, that it is not "fairly possible" to construe the statute as applicable solely to contracts made and executed in Florida, as here contended by appellant.
Obviously, as pointed out by the appellant, the Legislature of this state could not conceivably have any interest in a contract executed in another state by residents of other states, involving property in another state; and we agree with appellant that "Imputing any such intention to the Florida Legislature would be an absurdity." But a statute must, of course, be read in its entirety; and we think it is equally clear, from the last sentence thereof, quoted and emphasized above, that the Legislature intended the Act to apply to "any contract whatever"  foreign or domestic  when Florida's contact therewith, existing at the time of its execution or occurring thereafter, is sufficient to give a court of this state jurisdiction of a suit thereon. And, in such event, nothing could be clearer than the legislative mandate that "No court in this state shall give effect to any provision or stipulation of the character mentioned in this section."
From the facts set forth in the certified question, it is clear that this state's contact with the subject contract and parties thereto is abundantly sufficient to give a court of this state jurisdiction of a suit thereon. Accordingly, the first question certified to this court, supra, must be answered in the affirmative. This holding is in accord with the general rule stated in 29A Am.Jur., Insurance, Sec. 1794, p. 865, as follows:
"* * * [W]here the statutes of the forum make void all agreements whereby the time for the bringing of actions is fixed at a period less than that prescribed by law, a contractual stipulation made in another jurisdiction is not available as a defense."
See also Galliher v. State Mutual Life Insurance Co., 150 Ala. 543, 43 So. 833; Asel v. Order of United Commercial Travelers of America, 355 Mo. 658, 197 S.W.2d 639; Gulf Insurance Co. v. Holland Construction Co., 218 Ark. 405, 236 S.W.2d 1003; and Watson v. Employers' Liability Assur. Corp., 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74.
The other question of state law which we are requested by the Court of Appeals to decide is stated by such court as follows:
"(2) Does an all-risks policy of insurance containing the following provision,
`The Company will also pay the actual loss of or damage (except by fire) to property of the Assured not specifically excluded by this Policy caused by theft or attempt thereat; or by vandalism or malicious mischief to *739 the interior of the residences of the Assured,'
and containing numerous limitations, exceptions and exclusions but none touching on acts of a spouse of an assured, cover losses resulting from acts of vandalism and from theft committed by the wife of the assured, hostile to him and without his consent, when the property damaged and taken was in the common residence of the assured and his wife?"
We have concluded that this question must also be answered in the affirmative. Th policy in question, designated on its face as a "Personal Property Floater Policy (World Wide)," is an "all risk" type of insurance policy. "This type of contract has been said to cover every conceivable loss or damage that may happen except when occasioned by the wilful or fraudulent act or acts of the insured." 2 Richards on Insurance, (5th Ed.) § 212. The appellant also points out in its brief that, in Pierce's Development of Comprehensive Insurance for the Household, it is said that in an "all risk" policy "it is the list of excluded causes of loss which is used to determine the true scope of the hazard coverage."
Clearly, then, in the absence of a provision expressly excluding from coverage loss caused by vandalism or theft on the part of the wife of the insured, and under the rule that an insurance policy must be liberally construed in favor of the insured, National Surety Co. v. Williams, 74 Fla. 446, 77 So. 212, it should be held that the loss here sustained is within the coverage of an "all risk" policy.
But, argues the appellant, the subject policy was a "family policy," insuring all the family property, some joint and some individually owned, and should be construed "to cover only against `risks' and not against deliberate acts by one of the persons insured * * *" The short answer to this contention is that the acts of vandalism and theft committed by the wife, in the husband's absence from their common residence and without his consent, involved property owned by the husband alone, and that the wife would be criminally liable for her actions in this respect under the decision of this court in State v. Herndon, 1946, 158 Fla. 115, 27 So.2d 833; and that the husband alone, and not the wife, was a party to the subject contract of insurance.
These circumstances, and the rule of the National Surety Co. case, and numerous others, noted above, require a finding that the loss here sustained is within the coverage of the subject "all risk" policy; and we so hold.
At the risk of unduly lengthening this opinion, we deem it appropriate to note that we have also considered, sua sponte, the question of our jurisdiction constitutionally to entertain the subject proceeding under the authority to do so contained in § 25.031, Fla. Stat., F.S.A., and Florida Appellate Rule 4.61 providing respectively as follows:
"25.031 Supreme court authorized to receive and answer certificates as to state law from federal appellate courts.  The supreme court of this state may, by rule of court, provide that, when it shall appear to the supreme court of the United States, to any circuit court of appeals of the United States, or to the court of appeals of the District of Columbia, that there are involved in any proceeding before it questions or propositions of the laws of this state, which are determinative of the said cause, and there are no clear controlling precedents in the decisions of the supreme court of this state, such federal appellate court may certify such questions or propositions of the laws of this state to the supreme court of this state for instructions concerning such questions or propositions of state law, which certificate the supreme court of this state, by written opinion, may answer." *740 and Rule 4.61 (Florida Appellate Rules):
"a. When Certified. When it shall appear to the Supreme Court of the United States, or to any of the Courts of Appeal of the United States that there are involved in any proceeding before it questions or propositions of law of this State which are determinative of said cause and that there are no clear controlling precedents in the decisions of the Supreme Court of this State, such federal appellate court may certify such questions or propositions of law of this State to the Supreme Court of Florida for instructions concerning such questions or propositions of state law.
"b. Jurisdiction. Questions or propositions of law referred to in subparagraph a hereof shall be certified for answer to the Supreme Court of this State.
"c. Method of Invoking Rule. The provisions of this rule may be invoked by any of the federal courts referred to in sub-paragraph a hereof upon its own motion or upon the suggestion or motion of any interested party when approved by such federal court.
"d. Contents of Certificate. The certificate provided for herein shall contain the style of the case, a statement of facts showing the nature of the cause and the circumstances out of which the questions or propositions of law arise and the question of law to be answered.
"e. Preparation of Certificate. The certificate may be prepared by stipulation or as directed by such federal court. When prepared and signed by the presiding judge of said federal court, it shall be certified to the Supreme Court by the clerk of the federal court and under its official seal. The Supreme Court may, in its discretion, require the original or copies of all or any portion of the record before the federal court to be filed with said certificate where, in its opinion, such record may be necessary in the determination of said cause.
"f. Costs of Certificate. The costs of the certificate and filing fee shall be equally divided between the parties unless otherwise ordered by this Court.
"g. Briefs and Argument. The appellant or moving party in the federal court shall file and serve upon its adversary its brief on the question certified within thirty days after the filing of said certificate in the appellate court of this State having jurisdiction. The appellee or responding party in the federal court shall file and serve upon its adversary its brief within twenty days after the receipt of appellant's or moving party's brief and a reply brief shall be filed within ten days thereafter.
"h. Oral Argument. Oral argument may be granted upon application and, unless for good cause shown the time be enlarged by special order of the Court prior to the hearing thereon, the parties shall be allowed the same time as in other causes on the merits."
We have requested briefs from the parties on this question. We are indebted also to amicus curiae, the Honorable Fred M. Burns, Assistant Attorney General of this State, who held such post in 1945 at the time the legislation now appearing as § 25.031 was conceived, drafted and enacted into law, for the history of this legislation and an exhaustive brief on the question of its validity.
Section 25.031 was enacted as § 1 of Ch. 23098, Acts of 1945, prior to the adoption in 1956 of the Revised Judiciary Article which among other things provides:
"Section 3. Practice and procedure.  The practice and procedure in all courts shall be governed by rules *741 adopted by the supreme court." Art. V, Const. of Florida, F.S.A.
The statute authorized this court to provide, by rule of court, for the certification to it by federal appellate courts of questions of state law determinative of a cause pending in a federal court, "which certificate the supreme court of this state, by written opinion, may answer." Rule 4.61 of the Florida Appellate Rules was adopted by this Court "pursuant to the power vested in this Court under Article V of the Florida Constitution, F.S.A. to adopt rules governing the practice and procedure in all courts of this State * * *." In re Florida Appellate Rules, 1961, Fla., 127 So.2d 444. The Rule re-stated the provisions of the statute and added details relating to the form and content of the certificate. Its adoption was a valid exercise of our organic power and provided a procedure for assisting, in a spirit of comity, the Federal Appellate system in questions of state jurisprudence, no other forum for so doing having been established by the laws of Florida.
It is obvious, therefore, that we need not concern ourselves with the question of whether this court derives its authority to entertain the subject proceeding from the statute or from the rule since, in either case, we have it. Cf. State v. Furen, Fla. 1960, 118 So.2d 6.
The real question here is whether § 4 of Revised Article V of our Constitution, adopted in 1956, which delineates the appellate jurisdiction of this court and provides for the issuance by it of named writs, should be construed as prohibiting this court from exercising any judicial powers other than those expressly provided for therein. Some doubt as to whether we may constitutionally exercise the judicial power attempted to be conferred by § 25.031 and Rule 4.61 has been generated by the language of this court in City of Dunedin v. Bense, Fla. 1956, 90 So.2d 300, at page 302, as follows:
"The orbit within which the Supreme Court must function was well defined in State ex rel. Watson v. Lee, 150 Fla. 496, 8 So.2d 19. We there held that jurisdiction of the Supreme Court is conferred by the Constitution itself. It is not endowed with any common-law prerogative outside of the boundaries established by organic law. Certainly, the appellate jurisdiction is clearly defined. Its original jurisdiction is stated with equal clarity. The ancillary constitutional writs referred to as those `necessary or proper to the complete exercise of its jurisdiction' are writs which are incidental to the jurisdiction either appellate or original otherwise delineated by the Constitution. If the last quoted provision were extended beyond this scope, then obviously by the simple process of passing a law, the Legislature could expand the original jurisdiction of the Supreme Court to an illimitable degree. * *"
It should be noted that in the City of Dunedin case the court was considering a statute attempting to vest in this court original jurisdiction to issue a writ of injunction  a writ not listed among those which the constitution, in § 4 of Article 5, expressly enumerates. Moreover, as pointed out by this court in its opinion in that case, the statute would "empower this court to encroach upon the nisi prius jurisdiction of the Circuit Courts which according to Section 11 [now Section 6], Article V, of the Constitution, `shall have exclusive original jurisdiction in all cases in equity * * *.'" When read in context and in the light of ancient and well settled principles of law, the City of Dunedin case does not appear to be controlling here.
Thus, there is no question but that state constitutions are in no manner grants of power, as is the federal constitution, but are limitations upon the power of the state legislature. All power not limited by a state constitution inheres in the people of *742 that state. The cases so holding are legion. See also 6 Fla.Jur. 298, § 37 stating:
"Although the Federal Constitution bestows power only in specific grants and is a document of delegated powers, the Florida Constitution is a limitation on power as distinguished from a grant of power, particularly with regard to legislative power."
"`It is a fundamental principle of constitutional law that each department of government, whether federal or state, "has, without any express grant, the inherent right to accomplish all objects naturally within the orbit of that department, not expressly limited by the fact of the existence of a similar power elsewhere or the express limitations in the constitution." 1 Andrews' American Law (2d ed.) Sec. 182, p. 221.' In matter of Richards, 333 Mo. 907, 63 S.W.2d 672, 675." Re Integration of Nebraska State Bar Association, 1937, 133 Neb. 283, 275 N.W. 265, 114 A.L.R. 151. Accord: In re Petition of Florida State Bar Ass'n, Fla. 1949, 40 So.2d 902.
With respect to legislation involving the judicial power inherent in the state, it has been many times held by this court that, while the Legislature cannot restrict or take away jurisdiction conferred by the constitution, constitutional jurisdiction "can be enlarged by the legislature in all cases where such enlargement does not result in a diminution of the constitutional jurisdiction of some other court, or where such enlargement is not forbidden by the constitution." Chapman v. Reddick, 41 Fla. 120, 25 So. 673, at page 677. Accord: Harry E. Prettyman, Inc. v. Florida Real Estate Commission, 92 Fla. 515, 109 So. 442, 445; South Atlantic Steamship Co. v. Tutson, 139 Fla. 405, 190 So. 675, 681; Pournelle v. Baxter, 142 Fla. 517, 195 So. 163.
It is now well established procedure for a federal court to abstain from deciding the merits of a case so as to afford the state courts a reasonable opportunity to construe a state statute involved in the case. As stated in Harrison v. N.A.A.C.P., 360 U.S. 167, 79 S.Ct. 1025, 1030, 3 L.Ed.2d 1152.
"This now well-established procedure is aimed at the avoidance of unnecessary interference by the federal courts with proper and validly administered state concerns, a course so essential to the balanced working of our federal system. To minimize the possibility of such interference a `scrupulous regard for the rightful independence of state governments * * should at all times actuate the federal courts,' Matthews v. Rodgers, 284 U.S. 521, 525, 52 S.Ct. 217, 219, 76 L.Ed. 447, as their `contribution * * * in furthering the harmonious relation between state and federal authority * *.' Railroad Comm. of Texas v. Pullman Co., 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971."
And statutes such as § 25.031  enacted by the Florida Legislature "with rare foresight," [363 U.S. 207, 80 S.Ct. 1222, 1226] to borrow Mr. Justice Frankfurter's words describing its action in this respect  cannot help but contribute substantially to the salutary policy quoted above, since such statutes would provide a vastly more expeditious method of securing an authoritative decision by the court of last resort of a state on a doubtful question of state law than does the declaratory judgment procedure, the route frequently followed in such cases. See Harrison v. N.A.A.C.P., supra; Allegheny County v. Mashuda Co., 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163; cf. Meredith v. City of Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9.
We have concluded that, in the absence of a constitutional provision expressly or by necessary implication limiting the jurisdiction of the Supreme Court to those matters expressly conferred upon it, and in the absence of a constitutional provision expressly conferring upon another court jurisdiction to exercise the judicial *743 power which is the subject matter of § 25.031 and Rule 4.61, and in the light of the well settled rule that all sovereign power, including the judicial power, "not limited by a state constitution inheres to the people of [the] state," such power may be granted to this court by statute if it is deemed to be a substantive matter, or by a rule of this court if it is deemed to be a matter of "practice and procedure," cf. State v. Furen, supra, 118 So.2d 6, 11. It follows that this court, having in the background derived authority both by statute prior to 1956 and by rule of court subsequent to the 1956 organic revision above referred to, may entertain the subject certificate.
Accordingly, the questions are within the contemplation of Florida Appellate Rule 4.61 and both are answered in the affirmative as hereinabove set forth.
It is so ordered.
TERRELL, THOMAS, HOBSON, DREW, THORNAL and O'CONNELL, JJ., concur.